BARBER AND BENNETT, INC., Respondent-Appellant, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 45699.)

Third Department, June 2, 1970.

304

Louis J. Lefkowitz, Attorney-General (J. Lawson Brown and Ruth Kessler Toch of counsel), for appellant-respondent.

De Graff, Foy, Conway & Holt-Harris (William F. Conway of counsel), for respondent-appellant.

HERLIHY, P. J. The parties appeal from a judgment awarding $1,014,096.81 plus interest as damages for a partial taking of claimant's property for highway purposes.

The claimant operated a feed mill business upon the premises with which we are here concerned. The improvements consisted of a three-story brick and frame warehouse erected in 1903 and subsequently adapted by the claimant to its business, and a complex of eight concrete silos with wooden storage cribs, added in 1956. In 1965, the State appropriated about one half of the claimant's land in fee, and took a temporary easement over the remaining 12,589 square feet for the purpose of razing the structures thereon. The taking included the structures "and any salvage therefrom".

The subject premises were considered by both parties to be an integrated feed mill facility and were therefore valued by the cost approach as a specialty, and no question is raised on this appeal as to the correctness of the finding by the trial court that the premises were a specialty.

OBSOLESCENCE

The primary question upon this appeal is whether or not the trial court erred in its finding that the subject premises were not subject to additional depreciation based on functional and economic obsolescence.

In eminent domain proceedings the over-all consideration is to award just compensation to a claimant and the approach of a court is limited to such relevant and probative evidence as is introduced in each particular case. In the present case it was agreed by the parties that the property was a specialty and that the proper method of evaluation was land value plus the reproduction costs of the improvements and fixtures less physical depreciation. Beyond this area of agreement, however, the State seeks to deduct from the depreciated value of the improvements and fixtures the further sum of 22% as and for "functional" obsolescence.

The trial court found that there was no functional obsolescence. The proof on behalf of the State on this issue was limited primarily to a showing of matters which in a new building would permit further mechanization of the handling of grains and would result in a saving on labor costs and/or would permit the more efficient handling of grains. The expert testimony on behalf of the State as to obsolescence was to some extent speculative because its expert relied upon a proposed hypothetical ideal plant instead of relating specifically to existing feed grain mills.

It is relatively certain that if the claimant had discontinued business at the subject premises for any reason other than condemnation, he would not have reproduced the same type of building and equipment complex for the conduct of his business at a new location. The State urges that as a matter of law the improvements and fixtures are subject to functional obsolescence upon a showing that a claimant would not faithfully reproduce them upon moving his site of business. The fact that a claimant would not reproduce his present business complex undoubtedly supports the factual inference that his present buildings and equipment are to some extent obsolete and/or inadequate. However, it appears that as a financial proposition, the question of functional obsolescence is dependent upon the extent to which the existing improvements are adapted to the needs of the business being carried on at the premises and the extent to which the business itself is adapted to profitably serving a public need.

It is perceived that the forms of obsolescence may vary so as to relate to technological and inventive advances which lessen the value of older machines and equipment or to merely a new and more efficient way of aligning the processing of raw materials into finished goods thereby lessening the value of limited space buildings and production line equipment. The present case does not establish either of the foregoing situations.

Obsolescence might appear in the form of superadequate buildings and/or equipment and that certainly does not apply to the present case. (See *United Traction Co.* v. *State of New York,* 33 A D 2d 1063, mot. for lv. to app. den. 26 N Y 2d 613; *Matter of City of New York* [*Lincoln Sq. Slum Clearance Project*], 15 A D 2d 153, 178, affd. 12 N Y 2d 1086; *Matter of City of New York* [*Harlem Riv. Houses-New Colonial Ice Co.*] 22 A D 2d 882, 883.) The subject matter has been defined as follows: " Functional depreciation is caused by the inadequacy or obselescence of the facility due to developments which have made it incompetent to perform its function properly or economically even before its natural life has run. While physical depreciation is inevitable, functional depreciation may or may not happen." (See 5 Nichols, Eminent Domain, § 20.5[4].) The record does not indicate that the subject property was in any way depressed because of such economic conditions as a declining market for its products or a generally depressed local geographic market for such products. In essence, the type of functional obsolescence urged by the State is not directed toward showing that the premises or any part thereof were not being utilized or *could not* be utilized and were not necessary for the feed mill business, but instead its proof was directed toward the question of the profitable utilization of the premises for the feed mill business.

In opposition to the adverse profit conditions urged by the State, the record clearly establishes a profitable operation at the subject premises, with no indication that the business could not so continue to operate in the foreseeable future, and that as a *practical* matter the premises were well adapted to the claimant's business. The facts that the building as designed and the premises as situated precluded certain innovative production economies do not appear to be conclusive on the primarily factual question of functional obsolescence.

The record establishes that at its new location the claimant erected a building complex substantially different from that utilized at the subject premises with the result of greater production capacities and a more thoroughly mechanized operation. It is fair to conclude that the claimant would not have reproduced the complex appropriated by the State and that therefrom the inference may be drawn that the subject premises were in fact obsolete. However, it does not appear that the construction of premises so as to have increased production and sales capacity or the incorporation of mechanical devices to save on labor costs is so directly related to the question of adequacy of the subject premises for the nature and extent of the business carried on thereat as to require a finding of obsoles-

cence as a matter of law. The facts of increased production capacity and perhaps a greater market or marketability of the claimant's product are new elements which might well not have had any bearing that would have reduced the value of the facilities at the subject premises beyond ordinary physical depreciation.

The State has shown that the improvements and fixtures could have produced or resulted in greater profits in a new building, but that does not show that a prospective purchaser would have discounted the value of the subject premises beyond physical depreciation upon the ground of functional or economic obsolescence. It would seem apparent that there can be no rigid rule as to what facts will require a finding of obsolescence as a matter of law, but that each case must be considered upon its own facts on this issue (cf. *Chiloway Charcoal* v. *State of New York*, 33 A D 2d 712, mot. for lv. to app. granted 26 N Y 2d 612). For the foregoing reasons the question of obsolescence was a factual issue for the trial court and the present record is not so substantial in favor of obsolescence that this court should reverse the finding of the trial court in this regard.

### VALUATION OF IMPROVEMENTS

The State further contends that the findings of the trial court as to the before value of the land; the main building; and the separate silo complex and the cupolas and bins are unsupported by the evidence.

The trial court properly found that the comparable sales of vacant land relied upon by the claimant's expert could not be relied upon as they were primarily of commercial property whereas the present property had a highest and best use before the taking of industrial and after the taking of light industrial. The State's expert had properly used comparable sales relating to industrial land and had so adjusted the sales as to reach a before value of $1 per square foot. The trial court purported to rely upon the State's comparable sales to reach a value of $2.25 per square foot, however, there was only one such comparable at $2.25 per square foot or higher and that sale was of such a lesser square foot dimension than the subject premises that it does not appear to be fully comparable to the subject premises. We do not agree with the State that the court must accept the opinion of its expert that the value of the subject premises was $1 per square foot, however, the comparable sales do support the finding of $1.75 per square foot as the value of the subject land and the award and judgment must be modified accordingly.

In placing a value on the main building on the premises before allowing anything for the improvements contained therein, the claimant's expert applied the value of $1 per cubic foot to reach an over-all reproduction cost of the bare building of $600,000. The claimant's expert did not attempt to relate this figure to actual building costs in the Albany area or the type of construction utilized in the main building, but instead relied upon his experience and the experience of other firms which he had contacted in arriving at an estimated average cost of reproducing a feed mill building. As to his estimated reproduction cost of this building it appears that the expert opinion was very little more than a naked opinion which is entitled to little, if any, weight and is so inadequate as to fail to establish a range for the reproduction cost of the main building. The State's expert witness as to the reproduction cost of the main building was a contractor in the Albany area and he submitted an itemized cost basis for the in place reproduction of the main building. He specifically relied upon the actual costs of the various component items utilized in the reproduction of the main building in the Albany area and his opinion as to the reproduction cost is not mere speculation. While it is true that the over-all evaluation by the trial court is within the range of the testimony and thus should be upset only if the trial court committed some legal error (*A. E. Ottaviano, Inc.* v. *State of New York*, 26 A D 2d 844), it is apparent that as to the reproduction cost of the main building the record does not support a finding of before value in excess of $369,620 and the judgment must be modified accordingly (*Ridgeway Assoc.* v. *State of New York*, 32 A D 2d 851).

As to the evaluation of the silo complex and the cupolas and bins of the main building, the claimant's expert utilized a cubic foot estimate of value and in his testimony asserted that he had checked his estimated value against the actual cost to the claimant of building some or all of these items and that the estimate was in line with the actual costs. It appears that in regard to these items the testimony of the claimant's expert was more than a naked opinion as to an estimated reproduction cost and did create a range of value so that the trial court could properly find a figure between the high estimate of claimant and the low estimate of the State. (See *A. E. Ottaviano, Inc.* v. *State of New York, supra.*)

### PHYSICAL DEPRECIATION

The claimant upon its cross appeal asserts that the trial court erred in selecting an over-all depreciation rate of 25% for the

structural additions and 40% for the machinery. The experts for both sides used a variety of depreciation rates for physical depreciation for each of these items, depending on age and condition. The rate selected by the court is well within the maximum and minimum testified to by the experts, and the dollar amount is also within the range of the expert testimony. The State has raised no objection as to the rates of over-all depreciation selected by the court and we note that it appears the claimant has benefited from the rates selected by the trial court as to the structural additions. (Cf. *Matter of City of New York* [*Lincoln Sq. Slum Clearance Project*], 15 A D 2d 153, 175, affd. 12 N Y 2d 1086, *supra*.)

## SUMMARY

In accordance with the foregoing the judgment appealed from must be modified upon the following findings:
Before Value:

| | | |
|---|---:|---:|
| Land    (25,439 sq. ft. at $1.75)... | | $44,518.25 |
| Improvements: | | |
|    Main Building .............. | $369,620.00 | |
|    Silos, cupolas, bins, etc....... | 350,000.00 | |
|    Machinery & fixtures........ | 645,320.00 | |
| | $1,364,940.00 | |
| Physical Depreciation: | | |
|    Main bldg. (38%)  $140,455.60 | | |
|    Silos, etc.  87,500.00 | | |
|    Machinery & Fix.  258,128.00 —486,083.60 | | |
| Before Value of Improvements.. | | +878,856.40 |
| Total Before Value.......... | | $923,374.65 |
| Value After (Land) (12,589 sq. ft. at .50) | | —6,294.50 |
| Total Damages (less easements) | | $917,080.15 |
| Direct Damages: | | |
|    Main Building  $229,164.40 | | |
|    Silos, etc.  262,500.00 | | |
|    Machinery & fix.  387,192.00 | | |
|    Land (12,850 sq. ft. | | |
|     at 1.75)  22,487.50 | | $901,343.90 |

Consequential Damages:  
  Land (12,589 sq. ft.  
    at 1.25)                          +15,736.25

| | |
|---|---:|
| Total direct and consequential.. | $917,080.15 |
| Temporary easements ......... | +2,012.56 |
| Total Award ................. | $919,092.71 |

The judgment should be modified by reducing the award to $919,092.71 with appropriate interest and, as so modified, affirmed, without costs.

REYNOLDS, GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Judgment modified, on the law and the facts, so as to reduce the award to $919,092.71, and interest, and, as so modified, affirmed, without costs.