■ CONGREGATION OF THE SONS OF ISRAEL, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 58742.)—Appeal from a judgment, entered March 2, 1976, upon a decision of the Court of Claims which awarded claimant the sum of $142,000 plus interest as damages for a permanent appropriation of its property for highway purposes. Claimant was the owner of a synagogue in the City of Amsterdam which was being utilized at the

time of the appropriation as a house of worship, a religion school and meeting hall for religious, social and community activities. It had been similarly used for many years prior to its taking and, absent appropriation, would have continued to be so used for many years in the future. Accordingly, all parties conceded that the highest and best use of the property was a synagogue and religious school. It is the general rule that "just compensation" is to be determined by reference to the fair market value of the property at the date of taking *(Matter of Board of Water Supply of City of N. Y.,* 277 NY 452; *County of Erie v Fridenberg,* 221 NY 389). In some cases, however, the fair market value approach is unworkable where the subject property, as here, is so unique as to be classified a specialty property without a recognizable market *(Keator v State of New York,* 23 NY2d 337, 339). Since the experts for each of the parties agreed that the synagogue should be treated as a specialty, it follows that the proper formula for damage measurement is reproduction cost less depreciation, the theory applied by the Court of Claims *(Keator v State of New York, supra; Tobin Packing Co. v State of New York,* 26 AD2d 986, 987). This is especially so where, as here, the person whose property has been appropriated intends to rebuild a like structure *(Chiloway Charcoal v State of New York,* 33 AD2d 712, affd 28 NY2d 914). The only dispute relates to the extent of depreciation deducted from the reproduction cost by the Court of Claims. Claimant's appraiser determined the reproduction cost to be $243,762 and deducted therefrom 20% for physical depreciation. The State's appraiser found the reproduction cost to be $295,441 and deducted 51% for physical depreciation and $91,831 for functional depreciation (obsolescence). This latter figure for functional depreciation was arrived at by subtracting the replacement cost of the building from the reproduction cost. The State's appraiser utilized replacement cost solely for the purpose of determining functional disability, and it was not employed, as argued and briefed by the State, as the proper rule for measurement of damages. Next, since the finding of the Court of Claims that the reproduction cost of the structure was $250,922.74 and, further, that the correct sum to be deducted for physical depreciation was $119,207.71, leaving the net sum of $131,700 (rounded), to which was added the uncontested land value of $10,300 for an award to claimant of $142,000, was well within the range of testimony, the issue can be further refined to an inquiry as to the correctness of the Court of Claims in refusing to deduct the sum of $91,831 for functional disability. While the State's appraiser corroborated the testimony of claimant's expert that the subject structure was "functionally perfect", he insisted that the building was functionally obsolete because of overadequate construction in that the foundation was two feet thick and the walls were of stone. Since modern materials and construction methods would be employed in reproduction, the replacement of the overadequate materials would reduce the costs of reproduction resulting in a savings that he equated with the dollar amount of the functional disability. As this court noted in *Barber & Bennett v State of New York* (34 AD2d 303, 306), " 'Functional depreciation is caused by the inadequacy or obsolescence of the facility due to developments which have made it incompetent to perform its function properly or economically even before its natural life has run. While physical depreciation is inevitable, functional disability may or may not happen.' " (Citing 5 Nichols, Eminent Domain, § 20.5[4]). Herein, since both experts agree that the synagogue is functionally perfect, it cannot be said that there is present any " 'inadequacy or obsolescence of the facility * * * which has made it incompetent to perform its function * * * even before its natural life has

run'" (p 306). Again, as this court stated in *Barber & Bennett (supra)*, "there can be no rigid rule as to what facts will require a finding of obsolescence as a matter of law, but that each case must be considered upon its own facts on this issue". A review of this record reveals a consistency of proof that claimant's structure was not an antiquated building *(Chiloway Charcoal v State of New York, supra)*, nor an inefficient structure *(Norman's Kill Farm Dairy Co. v State of New York,* 53 Misc 2d 578, 581) or functionally inadequate *(United Traction Co. v State of New York,* 33 AD2d 1063; *Harvey School v State of New York,* 14 Misc 2d 924, 926). To the contrary, the proof clearly established that the subject facility was wholly adequate for its purpose and could continue to render the services for which it was constructed for an indefinite period. Accordingly, since functional obsolescence is a question of fact *(Barber & Bennett v State of New York, supra)* and this record fails to substantially or preponderantly prove obsolescence, the judgment below must be affirmed. Judgment affirmed, without costs. Koreman, P. J., Greenblott, Sweeney, Mahoney and Reynolds, JJ., concur.