In the Matter of PUTNAM THEATRICAL CORPORATION, Respondent, v. BENJAMIN M. GINGOLD, as Commissioner of Assessment of the City of Syracuse, New York, Appellant.

Fourth Department, May 18, 1962.

*Stewart F. Hancock, Jr.*, Corporation Counsel (*George T. Driscoll* of counsel), for appellant.

*Smith & Sovik* (*John Timothy Smith, Sr., Martin F. Kendrick, Franklin J. Schwarzer* and *James A. O'Shea* of counsel), for respondent.

HENRY, J. Respondent appeals from a final order reducing the real estate tax assessment on petitioner's real property in the City of Syracuse from $1,600,000 to $1,005,000. The plot has frontage of 127.5 feet on South Salina Street, 273.24 feet on Jefferson Street and 126 feet on Clinton Street. It is improved by a theatre, office and retail store building constructed in 1928 at a cost for land acquired and building construction of $3,780,000.

After trial, at which the court heard the testimony of expert witnesses, who appraised the property by both summation (reproduction cost less depreciation) and economic (capitalization) methods, the court rendered its decision, which by section 720 of the Real Property Tax Law is required to " contain the essential facts found upon which the ultimate finding of facts is made ". The court found: " On April 2, 1956, the petitioner purchased the premises in an arm's length transaction for the sum of $1,675,000." The decision contains no mention of the appraisals of the property nor does it find any other facts except " facts pertinent to the Syracuse area " which might

bear upon loss of value of the property by economic obsolescence, and "facts  *  *  *  pertinent specifically to petitioner's property" which might bear upon loss of value of the property by functional obsolescence. The court made no finding that there was any loss of value from such obsolescence nor did it make any finding as to the reproduction cost of the property or the amount to be deducted therefrom because of depreciation. It made no finding of the income which the property might fairly be expected to produce or the value of the property determined by capitalization of such income. The court's ultimate finding of fact was that the value of the property on September 30, 1959, was $1,675,000. The only essential fact found by the court upon which this ultimate finding of fact was made is the purchase of the property by the petitioner on April 2, 1956, for that amount.

"In a tax assessment proceeding, evidence of the price paid upon the sale of the same property within a reasonable time  *  *  *  furnishes some, although by no means conclusive, evidence of value.  *  *  *  It would only be one element for consideration  *  *  *  weighed with all other relevant factors." (*People ex rel. Four Park Ave. Corp.* v. *Lilly,* 265 App. Div. 68, 71, 72; *Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 162.) "Purchase price is only some evidence of value." (Lee and Le Forestier Review and Reduction of Real Property Assessments, § 1:18 pp. 14, 15.) "[S]ales, though genuine, are by themselves far from conclusive as guides to value." (*Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 162.) "In determining what weight should be accorded such testimony, the time, the place, the circumstances and the conditions of the sale must be explored. Was the sale *bona fide?* Was it a distress sale? Was there a fair market? What were the terms of the sale? Has there been any change in conditions between the date of the sale and the taxable status date? All these questions would have an effect upon the worth of such evidence in fixing the value of property as of a given date." (*People ex rel. Four Park Ave. Corp.* v. *Lilly, supra,* p. 71.) "[F]ew sales are made in accord with the theoretical standard of a willing buyer and a willing seller. Buyers are naturally prone to seeking bargains — opportunities to buy at a price that would give an unusually high return — and sellers to await the purchaser whom necessity compels to acquire property at somewhat more than it would otherwise realize." (*Matter of City of New York* [*Maxwell*], *supra,* p. 162.) The weight which the court should give to the sale by Mosbacher back to the corporation in 1956 is to be determined

in the light of the facts and circumstances of the transaction. There is nothing in the evidence to explain who Mr. and Mrs. Mosbacher were, what their relationship was to the corporation, or in what manner the sale of the property to them was brought about. The land contract dated August 21, 1945, shows that they resided in New York City and that there was no broker in the transaction. Why a resident of New York City would buy a theatre and office building in Syracuse at a price of $1,650,000 under the terms of the agreement, needs explanation. They paid for the property with $500,000 cash and a 3% $1,150,000 bond and mortgage to Loew upon which they would not be personally liable. Loew remained in possession of all the property under the lease back, operated it and paid all expenses of the operation. All that was left for Mosbacher to do was to pay the interest on the mortgage and receive the rent. The object of the deal was not to raise money. Loew received only $500,000 in the transaction and there was no assurance that it would receive more until the due date of the mortgage on August 29, 1970. The purpose was not to unload the property. Loew continued in possession. The purpose was not to satisfy any desire of Mosbacher to enter the theatre business. All that was left for him to do was to receive rent and pay mortgage interest. The only inference that can be drawn from the facts is that it was only a paper deal to obtain tax benefits. This is demonstrated by Mosbacher's prompt redeeding of the property to the petitioner, as Loew's subsidiary, after the tax claims had been adjusted with the Internal Revenue Bureau in 1954. The evidence before the court did not justify its determination that this was an arm's length transaction. It was not a sale to which sufficient weight could be given to justify the ultimate finding of value.

Petitioner's expert, in his summation appraisal, valued the property at $1,630,000. In his economic appraisal he valued it at $1,150,000, and in a further appraisal " economic value and highest and best use " he valued it at $1,650,000. The appraisal put in evidence by the Commissioner of Assessment values the property by the summation method at $2,944,974, by the capitalization method at $2,251,422 and by capitalization method based on highest and best use, after remodeling the building, at $2,945,012. Both capitalization appraisals are based on insufficient evidence of the amount of income which could be derived from the property. Petitioner's expert has assumed income of the theatre from a possible lease thereof at a rent of 12% of the admission revenue. Assumption of such a lease is not based on any lease in the Syracuse area but

only on hearsay evidence of a lease in Washington, D. C., one in Cedar Rapids, Iowa, and another in Columbus, Ohio. In any event the assumed lease based on a percentage of admission revenue would depend in part on management and for that reason would not be a proper basis for the capitalization appraisal (*People ex rel. Hotel Paramount Corp. v. Chambers,* 298 N. Y. 372). Respondent-appellant's appraiser used an erroneous amount based on the Mosbacher Loew lease-back which was not shown to be entitled to any weight.

Reproduction cost was found to be $4,184,000 by petitioner's experts. The important differences in the respective appraisals relate to depreciation, obsolescence and land value. The summary method to ascertain value of property is also called the summary approach to value, cost approach to value and replacement cost less depreciation. Present value is found by deducting depreciation from replacement cost. Depreciation includes physical depreciation, functional obsolescence and economic obsolescence. Physical depreciation is wear and tear occasioned by use and the elements. "Functional obsolescence is loss of value brought about by failure or inability to deliver full service. It includes * * * any loss of value by reason of short-comings or undesirable features contained within the property itself." (Assessors Manual, issued 1957, by State Board of Equalization and Assessment, vol. 4, p. 164.) It is loss of utility and failure to function due to inadequacies of design and deficiencies in the property. (Friedman, Encyclopedia of Real Estate Appraising, pp. 49, 50; McMichael's Appraising Manual [4th ed.], p. 51.) Economic obsolescence is loss of value brought about by conditions that environ a structure, such as a declining location or the downgrading of a neighborhood resulting in reduced business volume. (Assessors Manual, *supra,* p. 165; Friedman, Encyclopedia of Real Estate Appraising, pp. 49, 50; McMichael's Appraising Manual [4th ed.], p. 51.) Petitioner's expert obtained his summation appraisal value of $1,630,000 by subtracting from the $4,184,000 reproduction cost the amounts which he determined should be deducted therefrom for physical depreciation and functional and economic obsolescence. Certain of such deductions were not justified by the evidence. He deducted physical depreciation for 33 years, whereas only 32 years had elapsed from the time of construction to the assessment date. He deducted $516,600 for functional and economic depreciation on the office building (Building A) and $57,169 from the store building (Building D) although the evidence did not justify any deduction therefor. Correction of these items changes his depreciated value of the buildings from $900,000 to $1,555,020.

The evidence does not support any finding of functional obsolescence of the office area of petitioner's property. It is a first-class building in good condition; one of the best in Syracuse; in the top-rental section. It is an up-to-date office building of protected steel construction serviced by three elevators. It is in a good state of repair. There is no testimony that it failed to provide the services for which it was used. Petitioner's expert failed to specify, and the evidence does not show, any instance in which it had lost utility or failed to function. There is no evidence to support a finding of functional obsolescence of the office building in any amount.

There is much evidence, however, which may be considered, on the subject of economic obsolescence such as population growth of Syracuse and Onondaga County, traffic and parking conditions, sales tax, and competition from shopping centers. The fact that there has been a 93% increase in population in the towns surrounding the City of Syracuse while the city has lost 6,000 population may result in more rather than less business in the business area. Traffic and parking conditions in the central business district are shown to be improving. Against the competition from shopping centers there is the increased business resulting from increase in population of the area and at the university. The reasons advanced to show a downgrading of the area are overborne by evidence that Syracuse is the focal point of a region which has been characterized by rapid growth. Its strategic location will result in significant expansion. It has a good financial debt margin. The area has good connections with the Thruway and the Penn Can Highway. Petitioner's property is in the 100% block in downtown Syracuse where property is being improved. The area benefits from public buildings, courthouse, city hall, county buildings, churches, hotels and stores that have operated many years, creating good will and stability. Retail sales have increased in the district from $118,500,000 in 1948 to $130,000,000 in 1954 to $133,100,000 in 1957. Department store sales increased from a 1947 base of 100 to 104 in 1950; 121 in 1955 to 134 in 1960. The area will benefit from urban renewal, which the Common Council has approved, and improved off-street parking.

The court cannot allow deductions under the name of economic obsolescence on the basis of the general and controversial matters presented in this case.

"Value * * * is dependent upon long-term factors and is directly related to the intrinsic worth of the property that resists the impact of temporary and abnormal conditions."

(*People ex rel. Buck* v. *Rapp,* 36 N. Y. S. 2d 790, 796, affd. 266 App. Div. 709.) We find no basis for the deduction of $516,600 for obsolescence from the reproduction cost of the office building, or for the deduction of $57,169 from the store building.

A different situation exists, however, as to the deduction for such items from the reproduction cost of the theatre building. There is evidence in the record of functional obsolescence of this building. The most apparent loss of utility in the theatre is its unnecessarily large size with a ceiling five stories high, and its design for stage shows that are no longer held.

There is also proof of economic obsolescence of the theatre. The testimony shows that there has been a substantial decline in motion picture attendance because of competition from television and sports. The movie-going habit declined because of the change in the entertainment habits of the people, the emergence of television, the increasing variety of entertainment available to the public and the development of drive-in-theatres. The deduction of 25% because of functional and economic obsolescence of the theatre building was justified and deduction of 34% for the stage building was also justified.

The land is appraised by petitioner's expert at $728,000, and by respondent-appellant's expert at $1,759,612. The Commissioner assessed it at 60% of full value for $839,000. The full value according to the assessment was $1,398,333. The burden is upon the petitioner to prove that the assessment is erroneous. Its evidence is insufficient to overcome the value found by the Commissioner. The appraisal of petitioner's expert when corrected as to physical depreciation and functional and economic obsolescence demonstrates that the depreciated value of petitioner's buildings was $1,555,020 which added to land value of $1,398,333 shows that the total value of the land and buildings, equalized at 60%, was greater than the amount of the assessment complained of.

The final order should be reversed, on the law and facts, the assessment should be reinstated and the petition should be dismissed, with costs to appellant.

WILLIAMS, P. J., BASTOW, GOLDMAN and HALPERN, JJ., concur.

Final order unanimously reversed on the law and facts, with costs, assessment reinstated, and petition dismissed. Certain findings of fact disapproved and reversed and new findings made.