OPINION OF THE COURT
Fuchsberg, J.
In this eminent domain proceeding, the sole question before us is whether financing costs that would have had to be expended in the course of reproducing a building situated on a taken parcel are to be included in an award properly calculated in accordance with the summation method (reproduction cost less functional and physical depreciation). We hold that they are.
The property, in the Borough of Manhattan, consists of a land area on which is located a five-story brick structure. It was originally erected, later renovated and, at all times until its condemnation, owned and occupied by respondent the Salvation Army. During trial, it and the City of New York, here the appellant, were in agreement that the building, into whose structure had been incorporated a gymnasium, a chapel, offices, in-house staff living quarters and other facilities uniquely designed to serve as the focal point for the respondent’s community activities, was one appropriately to be regarded as a specialty not readily convertible to other uses or capable of valuation by comparison with available market prices. Therefore, though the parties contended for widely divergent amounts as the correct valuation, the figures presented on behalf of each were computed, insofar as the building was concerned, solely in conformity with accepted cost of reproduction less depreciation standards. (See Keator v State *516 of New York, 23 NY2d 337; cf. Matter of Great Atlantic & Pacific Tea Co. v Kiernan, 42 NY2d 236, 240-241.)
Resolving the differences in amount, the trial court awarded a total of $607,000, allocating $41,425 for the land, $7,000 for fixtures and $558,575 for the building. The court excluded reproduction financing costs when it arrived at the last figure. In doing so, it pointed out that the Salvation Army had not "chosen to proceed to rebuild prior to receipt of the final award”, that it was still occupying the premises [under a rental agreement with the city] and that it had been paid interest on the award by the city to cover the interval between the taking and payment.
Modifying the Trial Judge’s decree, the Appellate Division ruled that an allowance should have been made for financing costs, which it fixed at $27,146. The city, whose own appraiser, after taking into account the contemporary condition of the money market, had estimated the financing item, if allowable, at $27,000, does not now challenge the quantum of either Special Term’s award for the building sans financing costs or of the allowance added by the Appellate Division to include them. It presses essentially one issue: the allowability of financing costs. For the reasons we now articulate, we agree with the Appellate Division’s disposition.
Implementation of the summation method requires the inclusion not only of payments for material, equipment, labor and other obvious physical ingredients which go directly into construction, but also of those charges which may be termed indirect or less direct, such as architects’ fees, contractors’ profits, interest and taxes on land value during the period of construction, cost of procuring necessary licenses and the miscellany of other essential overhead or incidental expenses. For a fair and realistic appraisal of reproduction costs must embrace in its reckoning all expenditures that reasonably and necessarily are to be expected in the re-creation of a structure so idiosyncratic as to leave no alternative method by which to measure fair compensation (Richards "Of Course” v State of New York, 36 AD2d 572, 573; 5 Nichols, Eminent Domain, par 20.2, subd [3]; 2 Orgel, Valuation Under Eminent Domain [2d ed], §§ 193, 194).
Financing costs are such an expenditure (see Kahn and Case, Real Estate Appraisal and Investment [2d ed], pp 185-187). Commonly, an owner will make payments to a contractor from the proceeds of a loan it will have secured for *517 financing the work; clearly the lender’s charges will be just as real an expense to the borrower as the dollars it pays to its contractor. Such costs will be no less real when an owner employs its own capital; it thereby foregoes its earning power by turning it into an equity investment which rarely will produce income during construction. In principle, the situation may be likened to that of an owner-carpenter or owner-bricklayer who contributes his services in kind. Thus, whether an owner uses its own or borrowed funds, the calculation of true cost would, either way, require inclusion of the costs of financing.
Banner Milling Co. v State of New York (240 NY 533, cert den 269 US 582), relied upon by the city, does not point to the opposite result. That decision, whose primary focus was on an issue foreign to the case before us (i.e., whether "good will” was a compensable item; see 240 NY, at pp 539-542; Orgel, op. cit., § 194, esp p 40, n 65), did not hold that financing charges were not an element of reproduction cost. To the contrary, the Banner court noted that all of the overhead expenses, including financing charges, had been considered in arriving at the total award the claimant there had received (240 NY, at pp 545-546). By no means did it suggest that it would have been proper to exclude them and it is not to be so understood (see Lapides v State of New York, 37 AD2d 755, 756; cf. Rustcon Developers v State of New York, 33 AD2d 582, 583).
We observe too that the expressions of our own lower courts, of tribunals in other jurisdictions and of respected textwriters are overwhelmingly in consonance with the inclusionary view of financing charges which we reiterate today (D’Amico v State of New York, 37 AD2d 681; Lapides v State of New York, supra, p 756; Matter of City of New York [Pelham Parkway Houses], 197 Misc 70; State v Willet Holding Co., 62 NJ 59; Kahn and Case, op. cit., pp 185-187; Encyclopedia of Real Estate Appraising [Friedman ed., 1968], p 85; cf. Matter of United States Comm., 295 F 950, app dsmd 265 US 598).
The fact that the claimant in the present case had received an award before it rebuilt was no reason to depart from that rule. It was the nature of the building compulsorily taken under constitutional power of eminent domain that called for fixing the award according to the summation method. There is no companion compulsion that one whose property is taken must in fact rebuild or, if it does, that it *518 duplicate the taken structure or, for that matter, that it do so within any particular time frame. The choice to do any or none of these is entirely within the province of the condemnee. A sum of money equal to the amount of the award, not a substitute structure which it subsequently may or may not decide to build, is what it is entitled to receive for its property. The absurdity of an opposite rationale becomes apparent when it is followed to a logical conclusion. For then a claimant who did not rebuild would also not be entitled to architects’ fees, builders’ profits or other nonphysical components that entered into the creation of the particular building that was valued. In short, a claimant is to receive what it would cost to reconstruct and not what it in fact does or does not expend in doing so.
Nor does the city’s liability for interest to the date of actual payment of the award affect the claimant’s right to reproduction financing charges. Conceptually, a condemnee is entitled to just compensation as of the instant its property is taken by the vesting of title in the condemnor. It is as of that time that the value is to be fixed and that rule applies whether reproduction costs are or are not a factor in the valuation of a particular property. Save in special circumstances not present here, during any delay in payment, the condemnor, as the new owner, has the right to possession of the property and the condemnee does not. Interest for the period of delay is for the condemnor’s withholding of the condemnee’s award, which belonged to it beneficially from the very time of the taking. (Wolfe v State of New York, 22 NY2d 292, 295; Kahlen v State of New York, 223 NY 383, 390.)
In sum, interest on the award is not duplicative of reproduction financing charges. The latter are ingredients of the value of the condemned structure as of the time it was taken. The interest reflects the value of use of the award thereafter (see Becker v Huss Co., 43 NY2d 527, 543).
Finally, the fact that, by separate arrangement, the Salvation Army continued to occupy the condemned premises while its new quarters were being readied has no bearing on its entitlement to financing costs. It is not suggested that its occupancy was in a capacity other than that of tenant. As such, it was in no different position than if it had rented temporary quarters in another building owned by the city, or by another landlord. Whatever was the city’s motivation for the leasing, be it the nominal rental thus produced until the *519 property would be put to the public use for which it was taken, or an occupancy that would secure the property against vandalism or deterioration, or even, perchance, the avoidance of unnecessary interruption in the Salvation Army’s valued community work, the matter is completely collateral to the issue at hand.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs.