■ In the Matter of NASSAU SUFFOLK CONTRACTOR'S ASSOCIATION, INC., et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.—Per Curiam. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Service Commission which approved an agreement providing, *inter alia,* for the transfer of respondent Long Island Lighting Company, Inc.'s Shoreham Nuclear Power Station to the Long Island Power Authority.

Petitioners commenced this CPLR article 78 proceeding to challenge a determination by respondent Public Service Commission (hereinafter the PSC) approving a February 28, 1989 agreement between the Governor and respondent Long Island Lighting Company (hereinafter LILCO) providing for the transfer of the Shoreham Nuclear Power Plant (hereinafter Shoreham) to the Long Island Power Authority (hereinafter LIPA), to be followed by its closing and decommissioning, and approving a proposed rate moderation agreement between LILCO and the PSC's staff granting LILCO certain rate increases over a period of years. In *Matter of Citizens For An Orderly Energy Policy v Cuomo* (159 AD2d 141), we upheld various determinations by various public entities, including the PSC, in approving and/or executing that agreement. For a more complete description of the factual background of the 1989 agreement and the PSC determination under review herein, reference should be made to the companion case.

One issue that may be quickly disposed of is petitioners' contention that the PSC violated the State Environmental Quality Review Act (ECL art 8) in approving the settlement

agreement and the rate moderation agreement without conducting environmental review. The identical objections were addressed in *Citizens (supra)* and found legally insufficient. Petitioners have not advanced any additional arguments persuasive of a different conclusion here.

Alternatively, petitioners claim that the PSC violated their procedural due process rights and statutory rights (citing Public Service Law § 66 [12]) to a full hearing by imposing an expedited hearing schedule on the settlement agreement and rate increase issues and by essentially "rubber stamping" a secretly negotiated rate plan which was based on stale data. While it is true that the hearings in this proceeding were concluded far more quickly than in the normal rate case before the PSC, petitioners have not demonstrated that there was any curtailment of the rights of interested parties to present testimony, engage in cross-examination and to rebut adverse claims *(see, Matter of New York Tel. Co. v Public Serv. Commn.,* 59 AD2d 17, 19).

The PSC's determination herein was the fourth consideration of LILCO's rates in a 15-month period. As is also more fully described in *Citizens (supra)* only some six months previously the PSC held hearings, considered and approved a Shoreham settlement agreement containing rate provisions quite similar to the proposed rate moderation agreement approved here. In calling for hearings on LILCO's rates in this proceeding, the PSC suggested using the rate determination in the prior Shoreham settlement review as a point of departure. Thereafter, not only was the compromise rate agreement between LILCO and the PSC staff submitted, the State Consumer Protection Board offered a separate proposal and various interested parties presented testimony and written comments on each proposal.

The PSC's decision sets forth a rational basis for its conclusion that the cumulative information it had before it, from almost continuous LILCO rate proceedings over the past several years, the hearings and submissions on the prior Shoreham settlement agreement and proposed rate increases, and the hearings herein, was more than adequate for making a determination. The decision also reflects a careful consideration and balancing of competing interests and concerns articulated by the parties at the hearings. Petitioners in their brief have pointed to nothing specific which the PSC should have but failed to consider, except for environmental concerns which, as we have already concluded, were not relevant as to the issues then before the PSC. Nor have petitioners made

any factual showing to support their claims that the information relied upon by the PSC was stale or that the agency uncritically accepted some rate plan arrived at by secret negotiations. Thus, we find no merit to petitioners' objections based on the brevity and expeditiousness of the hearings *(see, Matter of Kessel v Public Serv. Commn.,* 136 AD2d 86, 92-94, *lv denied* 72 NY2d 805).

Next, petitioners claim that the PSC exceeded its statutory authority by, in effect, coercing LILCO into abandoning Shoreham through the use of its rate-making powers. Apart from the obvious problem of petitioners' lack of standing to object to any alleged coercive deprivation of LILCO's right to operate Shoreham, the claim lacks a factual basis. Petitioners rely, first, on a 1987 determination by the PSC denying LILCO recovery for its Shoreham expenditures through a rate increase "while the deadlock over Shoreham continues". Previously, the PSC had granted emergency rate increases because of LILCO's largely Shoreham-caused exigent financial plight *(see, Matter of Consumer Protection Bd. v Public Serv. Commn.,* 78 AD2d 65, *lv denied* 53 NY2d 607). Then, according to petitioners, in February 1989 the PSC granted LILCO a temporary rate increase, but only on condition that the utility not operate Shoreham during the period in which the temporary rates were in effect "in order not to increase decommissioning costs and undermine settlement negotiations". Finally, petitioners point to the continuation of the same condition in the determination under review. We find no abuse of authority by the PSC in any of the actions objected to by petitioners. In 1987, not only was Shoreham not in service, but it was so controversial and under such fire that the prospects for its ever entering service were doubtful. Under such circumstances, it was entirely reasonable for the PSC to deny LILCO expanded recovery for Shoreham-related expenditures *(see, Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 85 AD2d 486, 490). Moreover, there is no reason to doubt the bona fides of the PSC's statement in its 1987 decision that it was not taking sides in the Shoreham controversy and not making any determination regarding the future rate treatment of Shoreham. Likewise, in February 1989, while intensive negotiations were taking place, ultimately leading to a settlement that same month, it was entirely rational for the PSC to condition any temporary rate increase on LILCO's maintaining the status quo by not placing Shoreham in operation, and imposing that condition was well within the PSC's statutory authority *(see,* Public Service Law § 72). Continuing

the same condition in the decision now under review certainly was not coercive; it merely reflected the terms of the agreement LILCO had already entered into.

Petitioners' remaining points are also unpersuasive, and do not require any extended discussion. Therefore, we confirm the PSC's determination and dismiss the petition.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.