[616 NYS2d 375]

In the Matter of LONG ISLAND LIGHTING COMPANY, Appellant-Respondent, v ASSESSOR FOR THE TOWN OF BROOKHAVEN et al., Respondents-Appellants, and SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT et al., Intervenors-Respondents-Appellants.

Second Department, August 22, 1994

## APPEARANCES OF COUNSEL

*LeBoeuf, Lamb, Greene & MacRae,* New York City *(Michael Lesch, John G. Nicolich, Peter C. Neger* and *Jacques M. Rimokh [Shea & Gould]* of counsel), and *Robert J. Grey,* Hicksville *(Ronald J. Macklin* and *Robert E. Fernandez* of counsel), for appellant-respondent. (One brief filed.)

*Murphy, Bartol & O'Brien,* Mineola *(Ernest T. Bartol* and *William L. Maher* of counsel), and *Emily Pines, Town Attorney* of Town of Brookhaven, Medford, for respondents-appellants and intervenors-respondents-appellants. (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

These seven consolidated tax certiorari proceedings concern the real property tax assessments levied upon the Shoreham nuclear power station, which, during the relevant time at issue, was owned by the petitioner, the Long Island Lighting Company (hereinafer LILCO). On January 11, 1993, after a trial conducted over the course of 140 trial days, the Supreme Court, Suffolk County (Stark, J.), entered a "separate and partial" judgment which, *inter alia,* fixed the market value of the Shoreham plant for the tax years 1976/1977 through 1983/1984, exclusive of tax year 1979/1980. Subsequently, on June 28, 1993, the Court entered a second separate and partial judgment which, *inter alia,* reduced the tax assessment on the Shoreham property for each of the tax years in question. Pursuant to this reduction, LILCO is entitled to a total tax refund of $34,289,955, plus interest. The parties have all appealed from the judgments. We conclude that the Su-

preme Court properly evaluated this case in accordance with the relevant standards of real property assessment and, therefore, affirm.

I

The tax parcel at issue consists of 113.79 acres on the north shore of Long Island in the Town of Brookhaven, County of Suffolk. Located thereon is the Shoreham nuclear power station, which, during all the tax years in question, was under various stages of construction. Also located on the parcel are a 69,000 volt switchyard and a 138,000 volt switchyard.

The history of this unfortunate project has been detailed in the various decisions its construction has generated (see, e.g., *Long Is. Light. Co. v Cuomo*, 666 F Supp 370, 377, *appeal dismissed and judgment vacated in part* 888 F2d 230 [2d Cir, 1989]; *Matter of Citizens For An Orderly Energy Policy v Cuomo*, 78 NY2d 398; *Cuomo v Long Is. Light. Co.*, 71 NY2d 349; *Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.*, 195 AD2d 140; *Matter of Long Is. Light. Co. v Assessor of Town of Brookhaven*, 154 AD2d 188; *Matter of Long Is. Light. Co. v Public Serv. Commn.*, 134 AD2d 135). LILCO's board of directors originally envisioned the construction of a 540 megawatt nuclear plant on the Shoreham site. Application for a construction permit was made in May of 1968. Shortly thereafter, LILCO decided to expand the capacity of the plant to 820 megawatts. Application for the construction of this redesigned plant was made in November of 1968.

Hearings on the granting of the construction permit commenced before the Atomic Energy Commission in 1970. However, as one court has noted, the "Commission's issuance of construction permits was abruptly halted a short time thereafter, however, in the wake of a decision by the Court of Appeals for the District of Columbia Circuit holding that the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.*, required the Atomic Energy Commission to perform a comprehensive environmental impact analysis before issuing construction permits *See Calvert Cliffs Coordinating Committee v. Atomic Energy Comm'n*, 449 F.2d 1109 (D.C. Cir. 1971). In July 1971 the Commission ceased issuing construction permits pending its development of procedures designed to comply with the *Calvert Cliffs* holding" *(Long Is. Light. Co. v Cuomo*, 666 F Supp 370, 378, *supra).*

In April of 1973 LILCO received a construction permit for the Shoreham project. At that time the estimated date for the commencement of commercial operation was July 1977. Numerous extensive construction delays intervened (see, *Matter of Long Is. Light. Co. v Public Serv. Commn.*, 134 AD2d 135, 139-141, *supra; see also,* Note, *Lights Out For LILCO: A Look At New York's Takeover Plan,* 53 Brooklyn L Rev 723, 724-726 [1987]). Additionally, in March of 1979 the accident at the Three Mile Island Nuclear Facility occurred. As we have previously observed, in response to this accident the United States Congress determined that no nuclear plant should be licensed to operate unless an adequate emergency plan could be devised and implemented for the area surrounding the nuclear facility (see, *Matter of Prospect v Cohalan,* 109 AD2d 210, 211, *affd* 65 NY2d 867; *see, Matter of Citizens For An Orderly Energy Policy v Cuomo,* 159 AD2d 141, 148, *affd* 78 NY2d 398, *supra; see also,* 45 Fed Reg 55,402 [1980]). Moreover, the record established that after the accident at Three Mile Island, there were extensive regulatory revisions relating to plant operation and safety.

Construction of the Shoreham facility was substantially completed by the end of 1984. Thus, from the time the design of the plant as an 820 megawatt facility began in November of 1968, until the time it was completed and ready for low level testing, a total of approximately 16 years and one month, or 193 months, elapsed.

With this background in mind, we may now turn to the specific question before this Court, whether the Supreme Court properly determined the value of the Shoreham facility for each of the tax years at issue.

## II

As the Court of Appeals has recently observed: "[W]hile property must be assessed at market value, there is no fixed method for determining that value. The ultimate purpose of valuation, whether in eminent domain or tax certiorari proceedings, is to arrive at a fair and realistic value of the property involved so that all property owners contribute equitably to the public fisc. Any fair and nondiscriminating method that will achieve that result is acceptable * * * The best evidence of value, of course, is a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy * * * Absent that evidence,

however, the courts have traditionally valued property by one of three methods: comparable sales, capitalization of income or reproduction cost less depreciation" *(Matter of Allied Corp. v Town of Camillus,* 80 NY2d 351, 356; *see also,* Real Property Tax Law § 305 [2]; *Matter of Merrick Holding Corp. v Board of Assessors,* 45 NY2d 538, 542; *Matter of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236, 240).

It is well settled that "specialty" properties, because of the unique use to which they are put, have no easily ascertainable market value and therefore must be assessed using the reproduction-cost-new-less-depreciation method of assessment *(see, Matter of Allied Corp. v Town of Camillus,* 80 NY2d 351, 357, *supra; Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment,* 65 NY2d 472, 485). In order to determine whether a specialty exists, four criteria must be met: "(a) the improvement must be unique and must be specially built for the specific purpose for which it is designed; (b) there must be a special use for which the improvement is designed and the improvement must be so specially used; (c) there must be no market for the type of property and no sales of property for such use; and (d) the improvement must be an appropriate improvement * * * and its use must be economically feasible and reasonably expected to be replaced" *(Matter of Allied Corp. v Town of Camillus,* 80 NY2d 351, 357, *supra; see also, Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507, 511-512 [quoting *Matter of County of Nassau (Colony Beach Club),* 43 AD2d 45, 49, *affd* 39 NY2d 958]).

■ We agree with the Supreme Court that the Shoreham tax parcel is a specialty property that must therefore be assessed using the reproduction-cost-new-less-depreciation method *(see, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment,* 65 NY2d 472, *supra; cf., Matter of Great Atl. & Pac. Tea Co. v Kiernan,* 42 NY2d 236, *supra).* The Shoreham plant is unique and specially built for the purpose of generating electricity. As the Supreme Court observed, there is unquestionably no market for the sale of nuclear power stations on Long Island. Finally, the improvement of the parcel with a plant for the generation of electrical power is an appropriate improvement, reasonably expected to be replaced *(see, Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507, 511-512, *supra; Matter of Tenneco, Inc. v Town of Cazenovia,* 104 AD2d 511, 512; *Matter of Resort HFA v Finance Admin.,* 81 AD2d 617).

## III

Application of the reproduction-cost-new-less-depreciation method generally requires the creation of a cost model which "must embrace in its reckoning all expenditures that reasonably and necessarily are to be expected in the re-creation of [the] structure" *(Matter of City of New York [Salvation Army]*, 43 NY2d 512, 516). These expenditures include direct costs, such as materials and labor expended to construct the structure to be assessed, and indirect costs, which include various incidental or overhead expenses attributable to that construction *(see, Matter of City of New York [Salvation Army]*, 43 NY2d 512, *supra; see also,* American Institute of Real Estate Appraisers, Appraisal of Real Estate, at 318 [10th ed]).

At trial, the parties presented sharply divergent cost models of the Shoreham plant. LILCO, through the testimony of its experts, generally utilized the original costs attributable to Shoreham. It then "translated" or "trended" each item of cost or expense so as to reflect its value at each of the seven relevant tax status dates at issue herein. Within this context, LILCO additionally presented three alternate scenarios relating to the question of when (i.e., at which relevant tax status date) a specific component of the Shoreham facility became a taxable fixture under the Real Property Tax Law *(see,* Real Property Tax Law § 102 [12] [b], [f]).

The respondents, on the other hand, while acknowledging the validity of the reproduction cost approach under New York law, employed a more complex methodology. Specifically, the respondents utilized a combination of seven techniques to arrive at a cost model for the Shoreham plant. These seven techniques can be grouped into two categories.

The first category focused on four variants of a so-called "direct situs" approach, whereby the Shoreham parcel was appraised using a sales comparison approach, an original cost method, a trended cost method and an income capitalization approach. According to one of the respondents' appraisers, the "greatest emphasis" was placed on the "direct situs" method.

The second general methodological category that the respondents employed was a so-called unit valuation approach, whereby all of LILCO's assets were appraised. After that, a percentage of the total was allocated in a proportion that represented the ratio that the Shoreham parcel bore to LILCO's total assets. Three variants were employed in connection with this unit valuation approach. These were the net stock

and debt approach (which produced "an estimate of what it would cost to acquire all the stock and assume all the debt of LILCO as of the valuation date"), the cost approach (which was represented by the original cost of LILCO's assets less "book" depreciation) and the income approach (which was "applied by capitalizing Net Utility Operating Income").

The Supreme Court accepted LILCO's methodology. With respect to the question of when a specific component becomes taxable real property, the Supreme Court applied LILCO's so-called "initial installation" scenario. According to the LILCO officer who prepared LILCO's cost analysis report, under the "initial installation" scenario, an item was deemed to become taxable real property when its "construction testing had been completed and * * * the installation was completed in accordance with the construction drawings".

We find that LILCO's methodology conforms to applicable New York law and is a reliable means of determining the market value of the Shoreham parcel (see, Real Property Tax Law § 305 [2]). Additionally, we find that the respondents' more complex methodology should be rejected. There was extensive testimony on behalf of LILCO which tended to establish that the respondents' figures were manipulated to converge at the "net book value" of the Shoreham facility. As noted previously, this is not the appropriate standard to be applied in determining the value of specialty property in New York (see, Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, supra).

Additionally, under the particular facts of this case, we reject, as problematic, the respondents' reliance on the unit valuation method. The allocation factor (i.e., the value of the parcel to be assessed vis-à-vis the value of the company's assets as a whole) that is used in the unit valuation method is highly speculative (see, Transcontinental Gas Pipe Line Corp. v Bernards Twp., 111 NJ 507, 521, 545 A2d 746, 753). Moreover, as the Supreme Court of New Jersey has observed in the context of an assessment of the property of a gas pipeline company: "Even if an accurate allocation percentage could be derived, the method still assumes that a utility's property earns income directly proportionate to its rate base value. This is a disputable assumption, since a utility's rate base includes not only pipelines, pump stations, and storage tanks, but office buildings, automobiles, as well as other assets * * * that currently do not contribute to providing service to consumers. While it can be said in a macroeconomic sense that

all of these assets contribute directly or indirectly to the transportation of natural gas * * * it is unreal to believe that diverse assets all contribute to a utility's income earning potential in a manner exactly proportional to their comparative depreciated original costs" *(Transcontinental Gas Pipe Line Corp. v Bernards Twp.,* 111 NJ 507, 522-523, 545 A2d 746, 753-754, *supra; see also, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment,* 65 NY2d 472, 485, *supra).*

We find this reasoning persuasive. Therefore, for this additional reason, we reject the respondents' methodology and accept that of LILCO.

We observe that LILCO's evidence was sufficient to rebut any presumption of validity that attached to the original assessment on the Shoreham parcel *(see, Matter of State of New York v Town of Thurman,* 183 AD2d 264, 266). Moreover, as adopted by the Supreme Court, LILCO's analysis of the reproduction cost of Shoreham is supported by the weight of the credible evidence *(see, Matter of Werb v De Garmo,* 62 NY2d 636; *Matter of Marine Midland Props. Corp. v Srogi,* 60 NY2d 885, 887; *Matter of Metropolitan Life Ins. Co. v Tax Commn.,* 57 NY2d 964; *Matter of Slant/Fin Corp. v Board of Assessors,* 186 AD2d 810; *Matter of Continental Assur. Co. and/or Moeby Realty Corp. v Mayor of Inc. Vil. of Lynbrook,* 113 AD2d 795, 799; *see also,* 98 NY Jur 2d, Taxation and Assessment, § 448).

The respondents assert that LILCO's appraisal report should have been stricken by the Supreme Court because it did not contain the "facts, figures and calculations" upon which LILCO's appraisers based their conclusions *(see,* 22 NYCRR 202.59 [g] [2]; *Matter of Orange & Rockland Utils. v Williams,* 187 AD2d 595). We have reviewed the report and are satisfied that it complies with the pertinent court rule *(cf., Matter of State of New York v Town of Thurman,* 183 AD2d 264, 268-269, *supra; Matter of Orange & Rockland Utils. v Williams,* 113 AD2d 760, 762-763).

## IV

Among their other arguments, the respondents challenge the manner in which the Supreme Court determined when an item becomes real property. Under the Real Property Tax Law, a "structure" that is "affixed" to the land is taxable as real property *(see,* Real Property Tax Law § 102 [12] [b]; *see*

*also,* Real Property Tax Law § 102 [12] [f]). The Court of Appeals has stated that a structure becomes affixed to the land when it meets the common-law definition of a fixture *(see, Matter of Metromedia, Inc. v Tax Commn.,* 60 NY2d 85, 90). As the Court noted: "To meet the common-law definition of fixture, the personalty in question must: (1) be actually annexed to real property or something appurtenant thereto; (2) be applied to the use or purpose to which that part of the realty with which it is connected is appropriated; and, (3) be intended by the parties as a permanent accession to the freehold" *(Matter of Metromedia, Inc. v Tax Commn.,* 60 NY2d 85, 90, *supra).*

■ We agree with the Supreme Court that LILCO's appraisers established that their "initial installation" cost analysis of the construction of the Shoreham plant conformed to these requirements. Pursuant to that analysis, an item was deemed a fixture when it was physically annexed to the parcel in a manner that demonstrated LILCO's "intention" that the annexation "be of at least semipermanent duration" *(Matter of Consolidated Edison Co. v City of New York,* 44 NY2d 536, 542). Under the circumstances surrounding the construction of this 820 megawatt nuclear facility, the limited and reasonable testing that was performed upon plant components prior to the completion of their installation was properly considered by LILCO's appraisers in connection with their determination of when an item became a taxable fixture *(see, South Seas Yacht Club v Board of Assessors & Bd. of Assessment Review,* 136 AD2d 537, 538-539).

### V

The respondents additionally challenge the manner in which financing costs were included in the calculation of reproduction-cost-new. It is well settled that financing costs (technically referred to as Allowance for Funds Used During Construction or AFUDC) constitute "expenditures that reasonably and necessarily are to be expected in the re-creation of a structure" *(Matter of City of New York [Salvation Army],* 43 NY2d 512, 516, *supra).*

■ In the instant case, the Supreme Court, in its calculations of reproduction-cost-new, did not employ the actual costs of financing the Shoreham project. Rather, the court, relying on the extensive testimony of LILCO's experts, utilized the financing costs that it deemed were reasonable for a facility of

the size and type of the Shoreham plant. We note that the evidence established that the instant case involved a huge construction project that was delayed, in part, by a unique and unprecedented combination of political, regulatory and social factors. Under these particular circumstances, the Supreme Court properly concluded that reasonable financing costs more closely conformed to a reproduction-cost-new model than did actual financing costs *(see, Public Serv. Co. v Town of Seabrook,* 126 NH 740, 496 A2d 352, 354; *see also, Public Serv. Co. v Town of Seabrook,* 133 NH 365, 580 A2d 702).

## VI

After calculating the reproduction-cost-new of the Shoreham facility on each of the tax status dates at issue, the Supreme Court deducted amounts attributable to physical depreciation and functional depreciation and economic obsolescence. It is well settled that it is appropriate to take into account these reductions when the reproduction-cost-new-less-depreciation method is used *(see, Matter of City of New York [Salvation Army],* 43 NY2d 512, *supra; Matter of Onondaga County Water Dist. v Board of Assessors,* 39 NY2d 601, 605).

Physical depreciation has been described as " 'wear and tear occasioned by use and the elements' " *(Matter of Tenneco, Inc. v Town of Cazenovia,* 104 AD2d 511, 513, *supra,* quoting *Matter of Putnam Theat. Corp. v Gingold,* 16 AD2d 413, 417).

■ Owing to the abnormally long construction period for the the Shoreham plant, a limited deduction for physical depreciation was warranted. LILCO established that physical deterioration occurred on various components of the plant during this construction period. In view of the fact that the Shoreham facility was not in operation during the years at issue, the Supreme Court properly limited its deduction for physical depreciation to that depreciation attributable solely to the impact of weather and the elements upon the plant during its period of delayed construction.

Functional depreciation (also referred to as functional obsolescence) has been defined as a "disutility diminishing in some way the value of the property" *(Matter of Onondaga County Water Dist. v Board of Assessors,* 39 NY2d 601, 605, *supra).* "It is loss of utility and failure to function due to inadequacies of design and deficiencies in the property" *(Matter of Putnam Theat. Corp. v Gingold,* 16 AD2d 413, 417, *supra).* Functional depreciation is equated with inadequacy of design or construc-

tion, "but overbuilding or excess capacity may also be a proper consideration in estimating functional loss" *(Matter of Onondaga County Water Dist. v Board of Assessors,* 45 AD2d 258, 262). Economic obsolescence has been defined as " 'loss of value brought about by conditions that environ a structure, such as a declining location or the downgrading of a neighborhood resulting in reduced business volume' " *(Matter of Tenneco, Inc. v Town of Cazenovia,* 104 AD2d 511, 513, *supra,* quoting *Matter of Putnam Theat. Corp. v Gingold,* 16 AD2d 413, 417, *supra).* "Economic obsolescence reflects a reduction in the value of property caused by factors extraneous to the property itself, such as changes in population characteristics and economic trends, excessive taxes and governmental restrictions * * * determining the existence and extent of economic obsolescence is an integral part of any proper application of the cost approach" *(Transcontinental Gas Pipe Line Corp. v Bernards Twp.,* 111 NJ 507, 541, 545 A2d 746, 763, *supra; see also, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment,* 65 NY2d 472, 485-487, *supra;* American Institute of Real Estate Appraisers, Appraisal of Real Estate, at 314 [10th ed]).

█ We agree with the Supreme Court that a deduction should be made to reproduction-cost-new (less physical depreciation) to reflect the functional and economic obsolescence of the Shoreham facility during five of the seven tax years in question. Further, we conclude that the values found by the Supreme Court were within the range of testimony and should not be disturbed *(see, Matter of General Elec. Co. v Town of Salina,* 69 NY2d 730, 732; *Matter of City of New York [Reiss],* 55 NY2d 885, 886; *Matter of Katz v Assessor of Vil./Town of Mount Kisco,* 82 AD2d 654, 659-660; *Barber & Bennett v State of New York,* 34 AD2d 303, 307; *United Traction Co. v State of New York,* 33 AD2d 1063, 1064; *cf., Matter of River House-Bronxville v Hoffman,* 79 AD2d 990).

LILCO established that, during the relevant times at issue, skyrocketing construction costs made the Shoreham facility less and less attractive to potential investors. LILCO also demonstrated that it became more and more likely that a potential investor would view a coal-fired generating plant as a less costly and more secure investment. Therefore, LILCO demonstrated that it is entitled to an allowance for functional and economic obsolescence to reflect the fact that the Shoreham facility was worth less than its reproduction cost *(see, People ex rel. Delaware, Lackawanna & W. R. R. Co. v Clapp,*

152 NY 490, 494; *Matter of Tenneco, Inc. v Town of Cazenovia,* 104 AD2d 511, 514, *supra).*

We have considered the parties' remaining contentions and find them to be without merit.

MANGANO, P. J., THOMPSON, SULLIVAN, BALLETTA and MILLER, JJ., concur.

Ordered that the appeal from the "separate and partial" judgment entered January 11, 1993, is dismissed, without costs or disbursements, as that judgment was superseded by the "separate and partial" judgment entered June 28, 1993; and it is further,

Ordered that the "separate and partial" judgment entered June 28, 1993, is affirmed, without costs or disbursements.