[675 NYS2d 615]

In the Matter of LONG ISLAND LIGHTING COMPANY, Respondent, and LONG ISLAND POWER AUTHORITY, Intervenor-Respondent, v ASSESSOR FOR THE TOWN OF BROOKHAVEN et al., Appellants, and SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT et al., Intervenors-Appellants.

Second Department, July 13, 1998

## APPEARANCES OF COUNSEL

*Fried, Frank, Harris, Shriver & Jacobson,* New York City (*Gregory P. Joseph* and *Peter L. Simmons* of counsel); *Murphy, Bartol & O'Brien, L. L. P.,* Mineola (*Ernest T. Bartol* of counsel), and *Emily Pines, Town Attorney* of Town of Brookhaven, Medford, for Assessor for Town of Brookhaven and others, appellants; and *Robert J. Cimino, County Attorney* of Suffolk County, Hauppauge (*Robert L. Garfinkle* of counsel), for County of Suffolk, intervenor-appellant. (One brief filed.)

*Lewis & Greer, P. C.,* Poughkeepsie (*Michael Englert* and *Lou Lewis* of counsel), for Shoreham-Wading River Central School District, intervenor-appellant.

*LeBoeuf, Lamb, Greene & MacRae, L. L. P.,* New York City (*Michael Lesch* and *John G. Nicolich* of counsel), and *Leonard P. Novello,* Hicksville (*Ronald J. Macklin* of counsel), for Long Island Lighting Company, respondent. (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

In these eight consolidated tax certiorari proceedings, we review real property tax assessments levied upon the Shoreham Nuclear Power Plant (hereinafter the Shoreham plant), which, during the tax years at issue, 1984-1985 through 1991-1992, was owned by the petitioner, the Long Island Lighting Company (hereinafter LILCO). We previously visited this troubled project in *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven* (202 AD2d 32), where we affirmed the Supreme Court's reduction of the assessments on the Shoreham parcel for the seven tax years from 1976-1977 through 1983-1984, exclusive of tax year 1979-1980 (known as the "Phase I" tax years). In the instant appeal, which deals with the "Phase II" tax years, the Supreme Court again reduced the tax assessments on the Shoreham parcel. The Assessor and the Board of Assessment Review for the Town of Brookhaven, and the intervenors Shoreham-Wading River Central School District and the County of Suffolk have appealed. We affirm.

I

In both Phase I and Phase II, the parcel under review consisted of 113.79 acres of land, a nuclear power station (composed of 15 principal structures) designed to generate 809 megawatts of electricity, a 69,000-volt switchyard, and a 138,000-volt switchyard. As Phase I dealt with the tax assess-

ments on the plant while it was being constructed, Phase II deals with the assessments on the plant during the eight tax years after the plant was substantially completed. During that time, the plant was irradiated and low-level power testing was performed. However, there was substantial public opposition to the opening of the plant, and it was eventually purchased by the Long Island Power Authority (hereinafter LIPA) for $1 (*see generally, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 35-36; *see also, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.,* 88 NY2d 503, 508-510).

In Phase I, the Shoreham plant was evaluated as "specialty" property (*see, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 36-37). As we noted, a property is a specialty when four criteria are met: " '(a) the improvement must be unique and must be specially built for the specific purpose for which it is designed; (b) there must be a special use for which the improvement is designed and the improvement must be so specially used; (c) there must be no market for the type of property and no sales of property for such use; and (d) the improvement must be an appropriate improvement * * * and its use must be economically feasible and reasonably expected to be replaced' " (*Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 37, quoting *Matter of Allied Corp. v Town of Camillus,* 80 NY2d 351, 357).

The appropriate valuation methodology for specialty property is the Reproduction Cost New Less Depreciation method (hereinafter the RCNLD), the application of which generally requires the creation of a cost model which " 'must embrace in its reckoning all expenditures that reasonably and necessarily are to be expected in the re-creation of [the] structure' * * * These expenditures include direct costs, such as materials and labor expended to construct the structure to be assessed, and indirect costs, which include various incidental or overhead expenses attributable to that construction" (*Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 38, quoting *Matter of City of New York [Salvation Army],* 43 NY2d 512, 516). Also added to the cost model are financing costs (technically referred to as Allowance for Funds Used During Construction or AFUDC) as these constitute " 'expenditures that reasonably and necessarily are to be expected in the re-creation of a structure' " (*Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 41, quoting *Matter of City of New York [Salvation Army], supra,* at 516). Finally,

under the RCNLD method, elements of depreciation are deducted from the cost model. These include amounts attributable to physical depreciation, functional depreciation, and economic obsolescence (*see, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment,* 65 NY2d 472, 486, cert denied 475 US 1082; *G.R.F., Inc. v Board of Assessors,* 41 NY2d 512, 514; *see also, Matter of Allied Corp. v Town of Camillus, supra,* at 356; *Matter of Onondaga County Water Dist. v Board of Assessors,* 39 NY2d 601, 605; *Matter of Tenneco, Inc. v Town of Cazenovia,* 104 AD2d 511, 513).

 The parties do not seriously dispute that the Shoreham plant should be evaluated as a specialty, as it was in Phase I, and we conclude that the Supreme Court properly relied on the RCNLD as the appropriate method of assessing the property (*see, Matter of Allied Corp. v Town of Camillus, supra,* at 357; *see also,* RPTL 305 [2]; *Matter of County of Suffolk [C. J. Van Bourgondien, Inc.],* 47 NY2d 507, 511-512; *see also, Matter of Saratoga Harness Racing v Williams,* 91 NY2d 639; *cf., Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes,* 92 NY2d 192). The dispute between the parties focuses on various specifics employed by the Supreme Court in its calculation of its RCNLD model, particularly those related to functional depreciation and economic obsolescence. It is to those issues that we now turn.

## II

During the Phase II trial, an expert for LILCO, Paul L. Gioia, testified as to the probabilities that the plant would achieve commercial operation as of each relevant tax status date (hereinafter RTSD) under review. Gioia, a former Chairman of the New York State Public Service Commission, based his conclusions on pertinent aspects of the controversy surrounding the construction of the Shoreham plant. These included opposition to the plant demonstrated by New York State government officials, both in the executive and the legislative branches, and local opposition, including opposition by officials of both Nassau and Suffolk Counties. Also among the various factors considered by Gioia in his evaluation of the probabilities that the Shoreham plant would not achieve commercial operation were the regulatory hurdles that LILCO faced in obtaining an operating license, including the impact of the refusal of the State of New York and the County of Suffolk to participate in emergency evacuation planning. Gioia's testimony addressed the issue of the degree to which the plant was either function-

ally depreciated or economically obsolete on each RTSD. Largely as a result of his testimony, the 809-megawatt power station was found by the Supreme Court to have no value during the last four tax years under review. The appellants challenge both the relevance and reliability of Gioia's testimony.

In *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven (supra,* at 42-43), this Court observed that "[f]unctional depreciation (also referred to as functional obsolescence) has been defined as a 'disutility diminishing in some way the value of the property' * * * 'It is loss of utility and failure to function due to inadequacies of design and deficiencies in the property' * * * Functional depreciation is equated with inadequacy of design or construction, 'but overbuilding or excess capacity may also be a proper consideration in estimating functional loss' * * * Economic obsolescence has been defined as 'loss of value brought about by conditions that environ a structure, such as declining location or the downgrading of a neighborhood resulting in reduced business volume' * * * 'Economic obsolescence reflects a reduction in the value of property caused by factors extraneous to the property itself, such as changes in population characteristics and economic trends, excessive taxes and governmental restrictions * * * determining the existence and extent of economic obsolescence is an integral part of any proper application of the cost approach' ".

■ Under the particular circumstances of this case, it was appropriate for the Supreme Court, in its determination of economic obsolescence, to consider the risk that the plant would never go on line on each RTSD. As the Supreme Court of New Hampshire stated in its review of the tax assessment on the Seabrook Nuclear Power Station, it is appropriate to reduce "the sum of construction costs * * * to account for the risk that the plant's operation would be delayed or that the plant would never go on-line * * * Any appraisal of a power plant under construction must necessarily include the quantification of risks of delay and cancellation in order to determine the plant's true [fair market value]" (*Public Serv. Co. v Town of Seabrook,* 133 NH 365, 372-373, 580 A2d 702, 706-707; *see also, Public Serv. Co. v Town of Seabrook,* 126 NH 740, 496 A2d 352).

We discern no reason why this principle should not be applied to the instant circumstances. Gioia's testimony convincingly established that political opposition to the operation of the plant was both intense and widespread and that governmental opposition on the State and local levels was overwhelm-

ing (see, Matter of Nassau Suffolk Contractor's Assn. v Public Serv. Commn., 163 AD2d 700, 702, affd 78 NY2d 398). Indeed, LIPA was created for the express purpose of remedying what the Legislature found to be a grave "situation threatening the economy, health and safety" of Long Island, caused, in substantial part, by the "imprudent" construction of the Shoreham plant (Public Authorities Law § 1020-a). To address this crisis, LIPA was given the authority to acquire, "through purchase or the exercise of the power of eminent domain * * * either the securities or assets of LILCO" (Public Authorities Law § 1020-h [1] [a]; § 1020-f). In connection with these powers of acquisition, LIPA was expressly instructed by the Legislature as follows: "As soon as practicable after the authority has acquired sufficient shares of LILCO stock to do so or after it has acquired all the property of LILCO * * * the authority shall forthwith close and decommission the Shoreham plant and shall investigate and develop alternative uses, if any, for such plant" (Public Authorities Law § 1020-h [9]).

To fail to take into account the political realities, of which the creation of LIPA was only one manifestation, would directly result in overvaluing the Shoreham plant for the purpose of these proceedings. The Court of Appeals has warned that the courts should be "cautious about applying the reproduction cost less depreciation method because it is most likely to result in overvaluation, given its tendency to ascribe too little weight to such factors as rising construction costs and diminishing value by functional obsolescence" (Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356-357, supra; see also, Matter of Saratoga Harness Racing v Williams, supra; Matter of New York Tel. Co. v Public Service Commn., 309 NY 569, 577-578). Economic obsolescence is a well-established factor to be utilized in the RCNLD method and it was properly employed in this case (see, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment, supra, at 486-487; see also, People ex rel. Delaware, Lackawanna & W. R. R. Co. v Clapp, 152 NY 490, 494; People ex rel. Manhattan Sq. Beresford v Sexton, 284 NY 145, 149; People ex rel. Parklin Operating Corp. v Miller, 287 NY 126, 130-131; People ex rel. Hotel Paramount Corp. v Chambers, 298 NY 372, 375).

### III

The appellants also assert that the Supreme Court improperly employed the income capitalization method in its assessment of the Shoreham plant. This argument is based on the

purported utilization of "income driven methodology" in connection with the court's determination of economic obsolescence.

In *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven (supra,* at 43), this Court specifically approved a reduction in reproduction cost to reflect the fact that "a coal-fired generating plant [would be] a less costly and more secure investment" than a nuclear plant. That reduction conformed to well-established law that reproduction cost, standing alone, will likely result in inflated value, and that it may therefore be appropriate to consider "earning capacity after reproduction" in an allowance for functional or economic obsolescence (*Matter of Tenneco, Inc. v Town of Cazenovia, supra,* at 514; *see also, Matter of Allied Corp. v Town of Camillus, supra,* at 356-357). The Court of Appeals has repeatedly stressed that "ultimate basis * * * for assessment" is "true market value" (*G.R.F., Inc. v Board of Assessors, supra,* at 515). In this regard, "[t]he relevance of income or profit produced in the operation of [a] specialty property is necessarily limited—in the valuation of the real estate—to the inquiry whether the structural improvements are suitable to the site and whether the full structural value of the building may be added to the value of the land" (*People ex rel. Hotel Paramount Corp. v Chambers, supra,* at 375). Property "may not in every case be worth what it would cost to reproduce it. That would depend upon the income or earning capacity * * * after it is built" (*People ex rel. Delaware, Lackawanna & W. R. R. Co. v Clapp, supra,* at 494).

■ Pursuant to these principles, and given the unique circumstances of this unfortunate project, it was entirely appropriate in this case to consider such factors as the earning capacity of the Shoreham plant at each RTSD. As was the case in Phase I, the cost model that the Supreme Court adopted here properly employed a comparative analysis of alternative sources of electricity in its determination of the profitability (and value) of the Shoreham plant (*see, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment, supra; see also, Matter of Resort HFA v Finance Admin.,* 81 AD2d 617, 618). To preclude such an analysis would result in an unfair and illegal overvaluation of the taxpayer in this case (*see,* RPTL 305 [2]).

## IV

The appellants additionally argue that the Supreme Court improperly devalued the Shoreham property by using the

"threat of condemnation" as a valuation factor. The appellants rely on cases holding that the threat of condemnation by the condemnor will not reduce the amount that the condemnor must pay to compensate the property owner. This is what happened in *City of Buffalo v Clement Co.* (28 NY2d 241), where the City of Buffalo, as part of an urban renewal project, expressed an intention to condemn certain property in the mid-1950's, but delayed the formal condemnation of the property for over a decade. In concluding that the property owner was entitled to damages for the diminished value of the property because of the threat of condemnation that "blighted" the property, the Court stated that "[i]n such cases where true condemnation blight is present, the claimant may introduce evidence of value prior to the onslaught of the 'affirmative value-depressing acts' * * * of the authority and compensation shall be based on the value of the property as it would have been at the time of the *de jure* taking, but for the debilitating threat of condemnation" (*City of Buffalo v Clement Co., supra,* at 257-258; *see also, Criscuola v Power Auth.,* 81 NY2d 649).

■ The appellants' reliance on the principle set forth in *City of Buffalo* is misplaced. In *City of Buffalo (supra,* at 258), the Court found that at the time of the de jure taking, the condemnee's property had been devalued by the " 'affirmative value-depressing acts' of the appropriating sovereign". The Court concluded that the condemnee was entitled to damages attributable to the decrease in value reflected by those acts. Thus, the Court prevented the condemnor from unjustly benefiting from its actions which had a negative impact upon the value of the subject parcel. This concern is not implicated here. Quite the contrary, in the instant case it is the taxing jurisdiction, and not the property owner, that seeks to enhance the value of the parcel by ignoring the impact that government has had upon its use. To countenance such a result would be inherently unfair. It would also exclude from the cost model of the Shoreham plant an aspect of economic obsolescence attributable to governmental opposition that this Court deems relevant to the assessment of the parcel (*see, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment, supra; see also, Matter of Commerce Holding Corp. v Board of Assessors,* 88 NY2d 724, 731).

## V

■ In a related argument, the intervenor-appellant Shoreham-Wading River Central School District asserts that it

established that the Shoreham plant was worth approximately $4 billion. This assertion is based on a rate base increase that LILCO received at the time of its transfer of the Shoreham plant to LIPA. The argument is without merit. At trial, LILCO established that any rate base increase it received from the Public Service Commission was intended to safeguard its financial viability and was entirely unrelated to the value of the Shoreham plant (*see, Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398, 408). In this regard, we note that we have previously held that a utility's rate base is an inappropriate factor to consider in the assessment of specialty property (*see, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 39-40).

We therefore conclude that the evidence presented by LILCO was sufficient to rebut any presumption of validity that attached to the original assessment on the Shoreham parcel, and that the assessments that were adopted by the Supreme Court were supported by the weight of the evidence (*see, Matter of FMC Corp. v Unmack,* 92 NY2d 179; *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra,* at 40; *Matter of General Elec. Co. v Town of Salina,* 69 NY2d 730, 732; *Matter of City of New York [Reiss],* 55 NY2d 885, 886).

The appellants' remaining contentions are without merit (*see,* RPTL 708 [3]; *Matter of Xerox Corp. v Sanger,* 79 Misc 2d 480). Accordingly, the judgment must be affirmed.

O'BRIEN, J. P., SULLIVAN, PIZZUTO and JOY, JJ., concur.

Ordered that the judgment is affirmed, with one bill of costs payable to the respondents.