OPINION OF THE COURT
Melvyn Tanenbaum, J.
This motion by plaintiffs (the Initiative For Competitive Energy and Jack Kulka) (IFCE), brought on by order to show cause (Berler, J.), dated May 27, 1998, seeking a preliminary injunction pursuant to CPLR 6301 and 6314, and the cross motion by defendant, the Long Island Power Authority (LIPA), for an order pursuant to CPLR 505 and Public Authorities Law § 1020-y (1) changing venue of this proceeding to Nassau County, or in the alternative, dismissing plaintiffs’ complaint pursuant to CPLR 3211 (a) (2), (4), (5) and (7), and the cross motions by proposed intervenors, Nassau County Legislature, Town of Riverhead and Town of Southold, each seeking leave to intervene pursuant to CPLR 1012 and 1013, and the cross motion by plaintiffs for an order pursuant to CPLR 3025 (b) seeking leave to amend the complaint to add an additional cause of action claiming that defendant LIPA’s proposed bifurcated rate plan is arbitrary and unreasonable in favor of Nassau County ratepayers, are determined as follows:
The Long Island Lighting Company (LILCO) proposed construction of a nuclear-powered electric generating plant (Shoreham) to provide future power services for LILCO’s customer service area located in Nassau, Suffolk and parts of Queens (the Rockaways) Counties. This plant was built at Shoreham (Town of Brookhaven, Suffolk County) in 1984. It was substantially completed at a cost of $5.5 billion amid controversy concerning the project’s cost and safety. This cost was a contributing factor in causing LILCO’s rates to be the highest in the United States.
In 1986, the Governor and State Legislature created the Long Island Power Authority (Public Authorities Law art 5, tit 1-A; L 1986, ch 517 [the Act or the LIPA Act]), a not-for-profit public corporation. The “sine qua non objective of the Act was to give LIPA the authority to save ratepayers money by controlling and reducing utility costs”. (Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, 414 [1991].) The *984 legislation’s primary statutory objectives were: (1) closing the Shoreham Nuclear Power Plant; (2) replacing LILCO as the provider of gas and electric power on Long Island; and (3) reducing power costs (Public Authorities Law §§ 1020-f, 1020-g, 1020-h).
By February 1989, LILCO and LIPA entered into an agreement to transfer the Shoreham Nuclear Power Plant to LIPA. Litigation ultimately delayed transfer of title to LIPA until February 29, 1992 (although the plant itself was rendered “permanently and irreversibly nonoperative in 1991” [see, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., 88 NY2d 503, 510 (1996)]). Although the Legislature indicated that replacement of LILCO would be the “best” or “most appropriate” method of remedying the problems addressed by the Act (see, Public Authorities Law §§ 1020-a, 1020-h [1] [a], [n]), LIPA was granted flexible authority to make the ultimate choice to acquire all or any part of LILCO’s stock and assets (Public Authorities Law § 1020-h). LIPA retained “sole discretion” to acquire and replace LILCO (Public Authorities Law § 1020-h [1] [b]), based upon time and circumstances including market conditions and the State’s financial condition. This broad discretion was conferred on LIPA so that “all of the powers necessary or convenient” to implement its multi-pronged, complicated purposes could be achieved (Public Authorities Law § 1020-f).
In 1995 (L 1995, ch 506, § 3), Public Authorities Law § 1020-f was amended to create the New York State Public Authorities Control Board (PACE), a five-member Board authorized to oversee LIPA’s operations (Public Authorities Law § 1020-f [aa]). This oversight responsibility required PACB’s prior approval of bonds and certain contracts in excess of $1 million (Public Authorities Law § 1020-b [12-a]).
In March 1997, LIPA agreed, in principle, to acquire through a stock acquisition, LILCO’s electric transmission and distribution facilities, and LILCO’s retail electric operations. In June 1997, LIPA, LILCO and the Brooklyn Union Gas Company (BUGC)* entered into an agreement subject to approvals from Federal and State regulatory agencies and the PACE. Regulatory approvals were granted by the Federal Energy Regulatory *985 Commission, the Nuclear Regulatory Commission and the Internal Revenue Service (Federal approvals) and in New York by the State Comptroller and the New York State Public Service Commission (State approvals).
The June 1997 acquisition was predicated on a determination that the merger would result in significant and substantial rate savings with higher savings for Nassau County ratepayers due to a preexisting tax certiorari judgment obtained by LILCO against Suffolk County, Brookhaven Town and the ShorehamWading River Central School District. On July 16, 1997, PACE approved LIPA’s acquisition subject to various conditions relating to corporate restructuring, management agreements, future purchase and lease agreements, and future financing. On August 21, 1997, LIPA accepted these conditions.
PACE granted LIPA permission to finance the LILCO acquisition (Public Authorities Law § 1020-f) through the issuance and sale of bonds. LIPA adopted bond resolutions dated May 13, 1998 and May 20, 1998 authorizing the issuance of $4.95 billion senior lien fixed rate and variable rate bonds. The State Comptroller thereafter approved the terms and conditions of LIPA’s bond proposals. On May 28, 1998, LIPA acquired LILCO by purchasing 99.9% of its stock.
Plaintiff IFCE is composed of a group of Suffolk County business and residential electric ratepayers. Plaintiffs’ motion brought on by order to show cause (Eerier, J.) sought a preliminary injunction of: LIPA’s acquisition of LILCO; the issuance and sale of capital appreciation bonds; adoption of a bifurcated rate structure for Nassau County, Suffolk County and Rock-away ratepayers; and payments or refunds relating to the proposed Shoreham property tax settlement and the Shoreham rebates, credits and Suffolk County surcharge.
IFCE’s complaint contains six causes of action claiming that: (1) LIPA exceeded its statutory authority to issue bonds; (2) LIPA violated Public Authorities Law § 1020-q (3); (3) LIPA’s issuance of bonds and/or adoption of a bifurcated rate structure is unconstitutional (NY Const, art X, § 5); (4) LIPA’s bifurcated rate structure violated the Suffolk County Tax Act (L 1920, ch 311, as amended); (5) LIPA’s bifurcated rate structure is arbitrary, capricious and without a rational basis; and (6) LIPA’s bifurcated rate structure is discriminatory and violates 42 USC § 1983, and New York Constitution, article I, §§ 2, 6 and 7 (a).
During the pendency of this action, on May 28, 1998 counsel for the parties entered into a stipulation which (inter alia) provided:
*986 (1) Statements for utility services will be sent under the regular billing schedules. Such estimates may reflect a bifurcated rate schedule. In the event the court invalidates any portion of the rate schedule, the Long Island Power Authority will provide prompt credits to its customers to reflect the court’s decision.
(2) No rebate checks will be issued prior to August 15, 1998. Any funds appropriated for such purposes will be prudently invested prior to the distribution of said funds.
Cross motions by proposed nonparty intervenors, Town of Riverhead and the Nassau County Legislature, were thereafter submitted, as was a stipulation by counsel and the Southold Town Attorney to permit the Town of Southold to intervene. Plaintiffs subsequently submitted a cross motion seeking leave to amend the complaint on July 6, 1998, and written correspondence from counsel (July 6, July 10, Aug. 13, Aug. 20, Sept. 23, 1998) have been submitted setting forth additional arguments by the parties.
In addition and in support of plaintiffs’ motion for a preliminary injunction, movants submit four affirmations and claim ratepayers and bond purchasers will suffer irreparable injury by a LIPA bond sale and discriminatory bifurcated rate structure. Movants assert that LIPA intends to use proceeds totaling $143 million from the sale of capital appreciation bonds to create preferences for Nassau and Rockaway ratepayers (Nassau). These preferences are claimed to result from the plan to give Nassau rebates totaling $62.5 million (Shoreham rebates) and credits totaling $50 million a year for five years, while only providing Suffolk ratepayers with $30 million a year for five years (Shoreham credits). It is plaintiffs’ position that LIPA intends to repay the bonds by imposing a discriminatory surcharge on Suffolk County ratepayers (the bifurcated rate structure) and that, absent an injunction, ratepayers and bondholders will suffer incalculable financial injury. Plaintiffs argue that court intervention was required to prevent: (1) the sale of the bonds; (2) distribution of bond proceeds; (3) imposition of a bifurcated rate structure; and (4) any payments related to rebates, credits and surcharges — to determine the legal and factual issues surrounding LIPA’s takeover.
Plaintiffs also claim that only LILCO, as Shoreham plant owner until February 1992, was authorized to seek recovery of Shoreham tax certiorari refunds and that LIPA acted “ultra vires” when it claimed to have ownership of LILCO judgments and refunds as part of the purchased assets. Plaintiffs contend that the impact of a bifurcated rate structure is discriminatory *987 against nine Suffolk towns (excluding Brookhaven). IFCE claims that an alternative one-quarter percent County sales tax proposal is the most equitable method of satisfying the Shoreham tax certiorari judgment. Movants also claim that LIPA failed to credit Suffolk County ratepayers with savings realized: (1) by closing the Shoreham power plant; and (2) by a $400 million settlement of a Suffolk County ratepayer-inspired RICO (18 USC § 1961 et seq.) lawsuit in February 1989, which benefitted Nassau ratepayers, and that such savings (measured in terms of protection of ratepayers’ health and safety, money and property) offset and eliminate the need for the Shoreham rebates and credits and the Suffolk surcharge to be imposed by implementation of the bifurcated rate structure.
In opposition and in support of LIPA’s cross motion to dismiss plaintiffs’ complaint, defendant submits an affidavit from LIPA’s Board chairman and two affirmations of counsel and various letters and claims that no legal basis exists upon which to sustain any valid claim against LIPA. Defendant asserts that the State Legislature authorized LIPA to acquire LILCO and to provide Long Island with electric service pursuant to Public Authorities Law § 1020 et seq. Defendant claims that the Public Authorities Law granted LIPA “all of the powers necessary * * * to carry out the purposes [of the Act]” including the power “[t]o make and execute agreements, contracts and other instruments necessary * * * including contracts with any * * * municipality, state agency or other entity” (Public Authorities Law § 1020-f [h]) “[to] issue * * * notes, bonds or other obligations to evidence such indebtedness” (Public Authorities Law § 1020-f [i]). LIPA claims it obtained the required approvals from Federal and State agencies and completed acquisition of LILCO on May 28, 1998. It is defendant’s position that LIPA purchased LILCO assets for $2.3975 billion and that among LILCO’s assets was the March 1997 judgment directing a refund of the $868 million LILCO tax payments. LIPA claims that it has the right to seek to enforce LILCO’s judgment, but that it has instead décided that it is in the economic interest of the community to compromise the judgment and implement a bifurcated rate plan.
Defendant contends that the six causes of action contained in plaintiffs’ complaint are not viable and must therefore be dismissed. LIPA argues that it has been granted the authority to issue bonds, use the proceeds to effectuate the proposed settlement of tax judgments, issue rebates and impose a surcharge. It is defendant’s position that implementation of its *988 plan using a bifurcated rate structure does not violate the New York Constitution, the LIPA Act (Public Authorities Law § 1020-q), or the Suffolk County Tax Act and does not discriminate or deny equal protection to non-Town of Brookhaven, Suffolk ratepayers.
Defendant claims that movants are not entitled to a preliminary injunction since plaintiffs have failed to make an adequate showing of irreparable injury, a balancing of the equities in their favor or a likelihood of ultimate success on the merits. Defendant also claims that plaintiffs’ action must be transferred to Nassau County since venue is only proper there (citing Public Authorities Law § 1020-y; CPLR 505 [a]). Moreover, defendant contends that plaintiffs lack standing to challenge LIPA’s issuance of bonds and to enforce Suffolk County Tax Act § 3 (L 1920, ch 311, § 3, as amended by L 1996, ch 636, § 1) and that principles of res judicata and collateral estoppel prevent plaintiffs from relitigating issues raised in a prior Nassau action entitled Suffolk County v Long Is. Power Auth. (177 Misc 2d 208), in which IFCE, as petitioner/intervenor, asserted the identical claims against LIPA. Defendant claims that the court rejected IFCE’s tax certiorari and rate surcharge claims and that plaintiffs are prevented from repeating these claims in this proceeding.
CPLR 505 (a) provides: “(a) Generally. The place of trial of an action by or against a public authority constituted under the laws of the state shall be in the county in which the authority has its principal office or where it has facilities involved in the action.” Public Authorities Law § 1020-y (1) provides: “The venue of any action or proceeding questioning the validity of this title shall be laid in the county in which the principal office of the authority is located.” Plaintiffs’ action does not contest the validity of Public Authorities Law § 1020 et seq., merely its implementation through LIPA’s proposed acquisition of LILCO. Although LIPA’s principal office is in Nassau County, venue in Suffolk County is proper since facilities involved in this action, principally the Shoreham plant, are located in Suffolk County. Additionally, no timely objection was raised by defendant (CPLR 505 [a]; 509). Accordingly, no impediment to venue exists and this action may be properly litigated in Suffolk County.
Plaintiffs’ declaratory judgment complaint claims that LIPA does not have authority to finance acquisition of LILCO by issuing bonds and using the bond revenues to finance the proposed Shoreham tax settlement agreement, the Shoreham *989 rebates and credits and the Suffolk surcharge. Plaintiffs assert that LIPA must discontinue all proceedings brought by LILCO which sought repayment of taxes resulting from improper assessments of the Shoreham plant including: (1) enforcement of the tax certiorari judgment (Stark, J.), entered March 26, 1997, against Suffolk County, the Town of Brookhaven, and the Shoreham-Wading River taxing district in the sum of $868 million; and (2) LIPA payments in lieu of taxes made since acquiring the Shoreham plant in February 1992, as well as the rebates, credits and future surcharges.
CPLR 3001 provides: “The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.” An action is justiciable when the controversy presented touches the legal relations of the parties having adverse interests from which harm is presently flowing or could flow in the future in the absence of a court determination of the parties’ rights. The controversy must be capable of disposition and be presented in an adversarial context with a set of concrete facts (Goodwill Adv. Co. v State Liq. Auth., 14 AD2d 658 [3d Dept 1961]).
Courts will not entertain a declaratory judgment action when any decree that the court might issue will become effective only upon the occurrence of a future event which may or may not occur (New York Pub. Interest Research Group v Carey, 42 NY2d 527, 531 [1978], quoting 3 Weinstein-Korn-Miller, NY Civ Prac 3001.09b; see, Employers’ Fire Ins. v Klemons, 229 AD2d 513 [2d Dept 1996]). If a decision rendered by the court might ultimately prove to have no effect on the substantial rights of either party, the complaint should be dismissed (Employers’ Fire Ins. v Klemons, supra, at 514, citing B’Nai Jacob v Park Slope Jewish Ctr., 199 AD2d 296, 297).
The Court of Appeals in New York Pub. Interest Research Group v Carey (supra, at 530-531) held:
“The fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory. In the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the court’s determination will have the immediate and practical effect of influencing their conduct * * *
*990 “But a request for a declaratory judgment is premature if the future event is beyond the control of the parties and may never occur * * * Then any determination the court may make would be merely advisory since it can have no immediate effect and may never resolve anything” (emphasis supplied).
Plaintiffs’ complaint centers on objections to a proposed Shoreham property tax settlement and a proposed bifurcated rate structure plan. No agreement has been reached with the taxing jurisdiction to resolve the tax refunds ordered in the March 1997 judgment. In addition, the projected resultant bifurcated rate plan which is contingent upon a Shoreham tax settlement agreement, and imposes a surcharge on Suffolk ratepayers, is not to occur until 2003. Under these circumstances, plaintiffs’ claims concerning the Shoreham tax settlement agreement and the bifurcated rate plan are not ripe for judicial review (New York Pub. Interest Research Group v Carey, supra).
Defendant claims that plaintiffs IFCE lack standing to challenge LIPA’s statutory authority to issue bonds and enter into agreements (first, second and third causes of action) and to seek to enforce provisions of the Suffolk County Tax Act (fourth cause of action).
Standing is a threshold determination resting in part on policy considerations that a person should be allowed access to the courts to adjudicate the merits of a particular dispute (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761 [1991]). An aggrieved party must sustain an injury in fact — an actual legal stake in the matter being adjudicated — and the injury asserted must fall within the zone of interests sought to be promoted or protected by the statutory provision under which the agency has acted (Society of Plastics Indus. v County of Suffolk, supra; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406 [1987]). Moreover, the plaintiff must show for standing purposes that the harm or injury suffered is in some way different from that of the public at large (Matter of Schulz v New York State Dept. of Envtl. Conservation, 186 AD2d 941 [3d Dept 1992], lv denied 81 NY2d 704 [1993]).
Plaintiffs’ claim of standing with respect to the first two causes of action is premised upon their status as nonBrookhaven, Suffolk County ratepayers whose rates, movants allege, will be disproportionately greater than Nassau County, Queens County (Rockaways) and Brookhaven Town ratepayers as a result of LIPA’s financing plan. IFCE claims that its *991 members therefore fall within the “zone of interest” the LIPA Act was designed to protect — to prevent excessive rates being charged to utility ratepayers.
The LIPA Act grants defendant broad authority and power to fulfill LIPA’s primary statutory objectives (Public Authorities Law § 1020-a). The core objective was to provide savings to ratepayers (Public Authorities Law § 1020-a). A second objective was to replace LILCO. The Legislature provided LIPA the authority to determine the most effective manner to accomplish these objectives. (Matter of Citizens For An Orderly Energy Policy v Cuomo, 78 NY2d 398, rearg denied 79 NY2d 851 [1992], supra.) LIPA was given specific authority “to issue bonds * * * to acquire real property * * * to pay interest on bonds or notes * * * to establish reserves * * * to maintain accounts * * * as the authority deem[ed] necessary or desirable, and to pay expenses incidental to the issúance of the bonds” (Public Authorities Law §§ 1020-f, 1020-k).
Public Authorities Law § 1020-f (h) provides the LIPA with the power “[t]o make and execute agreements, contracts and other instruments necessary or convenient in the exercise of the powers and functions of the authority * * * including contracts with any * * * municipality * * * and all municipalities are hereby authorized to enter into and do all things necessary to perform any such agreement, contract or other instrument with the authority”. Public Authorities Law § 1020-h (2) authorizes LIPA to acquire “all or any part” of LILCO’s securities or assets to further the legislative findings as LIPA in its sole discretion may determine providing that prior to any such acquisition the LIPA determines that higher utility rates will not result.
Plaintiffs’ first cause of action claims that LIPA has no authority to issue bonds, to use the proceeds to finance the proposed settlements (i.e., rebates, credits and surcharge), and to set or collect rates to consummate the various proposals. IFCE has failed to make any proffer that its members have sustained an injury in fact or that any alleged injury differs from that suffered by the community at large. Defendant has authority to issue bonds and to enter agreements in furtherance of its primary statutory objective (to lower rates and to replace LILCO). Absent a showing of injury, plaintiff has no standing to assert a claim of defendant’s lack of authority to issue bonds, make agreements or to set or collect rates. In addition, plaintiffs’ first cause of action claims that defendant lacks authority to use bond proceeds to finance the Shoreham tax *992 settlement agreement. This claim assumes that such an agreement already occurred and was ratified by the various municipalities and LIPA. Such a claim is clearly premature since it is undisputed that no agreement has occurred and that the municipalities have not “ratified” any proposals. Plaintiffs therefore lack standing as to this issue.
Plaintiffs’ second cause of action claims that Public Authorities Law § 1020-q (3) “bars ‘LIPA’ from entering into the proposed Shoreham tax agreement and from seeking recovery of the Shoreham Tax Refund.”
Public Authorities Law § 1020-q (3) provides: “3. No municipality or governmental subdivision, including a school district or special district, shall be liable to the authority or any other entity for a refund of property taxes originally assessed against the Shoreham plant. Any judicial determination that the Shoreham plant assessment was excessive, unequal or unlawful for any of the years from nineteen hundred seventy-six to the effective date of this title shall not result in a refund by any taxing jurisdiction of taxes previously paid by LILCO pursuant to such Shoreham plant assessment. The authority shall discontinue and abandon all proceedings, brought by its predecessor in interest, which seek the repayment of all or part of the taxes assessed against the Shoreham plant.” The Act authorizes LIPA to enter into agreements (Public Authorities Law § 1020-f [h]) with municipalities to fulfill the primary statutory objectives. LIPA has determined that the most cost effective means of compromising the $868 million tax certiorari judgment against Suffolk County is by implementation of the Shoreham tax settlement agreement. Plaintiffs have made no showing that IFCE members have sustained an injury in fact resulting from LIPA’s proposals. Nor is there any evidence presented to prove that IFCE members are within the “zone of interest” this statutory provision (Public Authorities Law § 1020-q [3]) was designed to protect. Plaintiffs’ claim under Public Authorities Law § 1020-q (3) is also premature since there has been no agreement on this issue.
IFCE’s third cause of action challenges the constitutionality of LIPA’s issuance of bonds and bifurcated rate structure. Plaintiffs recite article X, § 5 of the New York Constitution and mistakenly claim that IFCE has a constitutional right to challenge that portion of the bonds sold to finance the proposed settlement. Plaintiffs’ constitutional claim is based upon IFCE’s status as “voters” who have constitutional rights to challenge issuance of State bonds. Movants IFCE have not asserted *993 that any individual members are registered to vote and therefore representative of the group as “voters”. Nor can an entity claiming to be residential and commercial ratepayers be considered to represent Suffolk County voters. However, the court assumes that the individual plaintiff is a voter and taxpayer. But this does not provide status to allow him to challenge LIPA bond issues. LIPA bonds, as the financial instruments of an independent public authority, are not State-issued or State-guaranteed bonds. Because of the nature of these instruments, they are not subject to the article X, § 5 claims advanced by plaintiffs. (State Finance Law § 123-b; Matter of Schulz v State of New York, 81 NY2d 336 [1993].)
Plaintiffs’ fourth cause of action claims that the bifurcated rate structure violates the Suffolk County Tax Act. Section 3 of the Suffolk County Tax Act (Tax Act) (L 1920, ch 311, § 3, as amended by L 1996, ch 636, § 1) provides: “if * * * a final order * * * under article 7 of the real property tax law * * * determine [s] that the assessment reviewed was excessive, unequal or unlawful * * * then any amount at any time collected upon such excessive, unequal or unlawful assessment * * * as determined in such order shall, in the same manner as other county charges, and as otherwise provided in the real property tax law, be audited and paid by the county to the petitioner or other person paying such tax or other levy, including interest thereof as provided in article 7 of the real property tax law. So much of any tax or other levy, including interest thereon, as shall be refunded which was imposed for town, county [,] special district or school district, as hereinafter provided in the following paragraph, purposes shall be charged by the county to such town or special district and charged by the town to such school district as hereinafter provided.” The statute provides a framework for an allocation of liability among the county, town and local school districts relating to court-ordered assessment reductions. The Tax Act makes a town responsible for school tax refunds except in districts where a nuclear-powered electrical generating facility exists. (Board of Educ. v State of New York, 111 AD2d 505 [3d Dept 1985].) In those districts the town is obligated to charge “such school district any amount of taxes collected by such district upon such assessment in excess of the amount which would have been paid had such assessment been made as determined by such order.” (L 1983, ch 1018, § 1.) The Tax Act provides no private cause of action for individual citizens and no legislative intent may be implied granting a private citizen the right to maintain a claim under *994 its provisions (Sheehy v Big Flats Community Day, 73 NY2d 629 [1989]).
Defendant’s cross motion also claims that plaintiffs’ complaint must be dismissed pursuant to CPLR 3211 (a) (4), (5) and (7).
CPLR 3211 (a) (4), (5) and (7) provide:
“(a) Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that * * *
“(4) there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires * * *
“(5) the cause of action may not be maintained because of * * * collateral estoppel * * * or * * * res judicata * * *
“(7) the pleading fails to state a cause of action”.
CPLR 3211 (a) (4) requires dismissal where the court in which the prior action is pending retains jurisdiction and where that action was not terminated before the time at which the defense or claim in issue is asserted (7 Weinstein-Korn-Miller, NY Civ Prac 3211.20). In this instance, no basis exists to dismiss IFCE’s complaint pursuant to CPLR 3211 (a) (4) since the Nassau County companion action (Suffolk County v Long Is. Power Auth., 177 Misc 2d 208, supra) was dismissed (order and judgment, dated Mar. 24, 1998, Winick, J.) prior to commencement of this action (May 27, 1998).
The doctrine of res judicata prevents a party from litigating a claim which has already been litigated or which ought to have been litigated. (See, Siegel, NY Prac §§ 442, 443, at 585-586.) The principle is grounded upon the premises that “once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again”. (Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 485 [1979].)
The related law of the case doctrine is a rule of practice which provides that once an issue is judicially determined, either directly or by implication, it is not to be reconsidered by Judges or courts of coordinate jurisdiction in the course of the same litigation (Martin v City of Cohoes, 37 NY2d 162 [1975]; Holloway v Cha Cha Laundry, 97 AD2d 385 [1st Dept 1983]).
Collateral estoppel is a component of the broader doctrine of res judicata. A party asserting it must show: (1) that the issue in question is identical with an issue in the prior proceeding; *995 (2) that the issue in question was actually litigated or necessarily determined in the prior action; and (3) that the determination of the issue was necessary to reach the judgment awarded in the prior proceeding (Capital Tel. Co. v Patterson-ville Tel. Co., 56 NY2d 11 [1982]; Gilberg v Barbieri, 53 NY2d 285 [1981]).
On March 26, 1997, a tax certiorari judgment (Stark, J.) was entered in favor of LILCO for $868 million and against Suffolk County, the Town of Brookhaven and the Shoreham-Wading River Central School District. Defendant LIPA claims that when it purchased LILCO’s stock, it purchased the right to enforce the tax certiorari judgment. Plaintiffs IFCE claim that Public Authorities Law § 1020-q (3) bars LIPA from seeking to enforce that judgment.
In December 1997, Suffolk County commenced a CPLR article 78 proceeding challenging LIPA’s authority to accept PACB’s July 16, 1997 resolution and to replace LILCO. Plaintiffs IFCE successfully intervened as a party/petitioner and claimed in the petition that LIPA’s proposed LILCO takeover violated Public Authorities Law § 1020-q (3).
By order and judgment dated March 24, 1998, the Supreme Court (Winick, J.), Nassau County, dismissed the petition. With respect to IFCE’s Public Authorities Law § 1020-q (3) claims the order provides: “Petitioners claim that ‘LIPA’ violated section 1020-q (3) insofar as it agreed to compensate LILCO for its as yet unenforced tax certiorari judgment and further, that ‘LIPA’ improperly decided to impose a rate surcharge on Suffolk ratepayers. These claims are also without merit. First, there has been no definitive determination by ‘LIPA’ to impose a surcharge on Suffolk ratepayers. Thus, this claim is not ripe for judicial review. (See, Employers’ Fire Insurance Company v. Klemons, 229 AD2d 513.) And, a careful examination of section 1020-q (3) does not bar ‘LIPA’ from compensating LILCO for judgments and only precludes ‘LIPA’ from obtaining property tax refunds from 1976 to 1987.”
The court considered IFCE’s petition to contain two claims which alleged a violation of Public Authorities Law § 1020-q (3). The first was a claim that LIPA “improperly” decided to impose a rate surcharge on Suffolk ratepayers; the second was an assertion that LIPA agreed to compensate LILCO for the March 1997 tax certiorari judgment. In dismissing both claims, the court (Winick, J.) concluded that “section 1020-q (3) does not bar ‘LIPA’ from compensating LILCO for judgments (i.e., the March 24, 1997 tax certiorari Judgment) *996 and only precludes ‘LIPA’ from obtaining property tax refunds from 1976 to 1987.” This determination remains the law of the case and bars IFCE from attempting to relitigate the identical claim in any subsequent proceeding. IFCE’s claim which alleges that LIPA cannot compensate LILCO and/or enforce the tax certiorari judgment (Stark, J.) obtained by LILCO in March 1997 must therefore each be dismissed.
The issue before the court on a motion to dismiss for failure to state a cause of action is not whether the cause of action can be proved, but whether one has been stated (Stukuls v State of New York, 42 NY2d 272 [1977]). The court must accept the facts alleged as true and determine whether they fit any cognizable legal theory (CPLR 3211 [a] [7]; Morone v Morone, 50 NY2d 481 [1980]; Klondike Gold v Richmond Assocs., 103 AD2d 821 [2d Dept 1984]). A motion to dismiss a declaratory judgment before answer presents for determination only the question whether a case for a declaratory judgment is made out, not the question of whether plaintiff is entitled to an adjudication in his favor (Law Research Serv. v Honeywell, Inc., 31 AD2d 900 [1st Dept 1969]). However, in cases where there are no factual issues presented by the pleadings or where the facts are undisputed, a court may award judgment to the appropriate party (Cohen v Employers Reins. Corp., 117 AD2d 435 [1st Dept 1986]).
Each of the causes of action contained in plaintiffs’ complaint dismissed for IFCE’s lack of standing, justiciability and under principles of res judicata and collateral estoppel, are also not sustainable as viable claims against LIPA pursuant to CPLR 3211 (a) (7).
LIPA’s authority to issue bonds, to use bond proceeds, and to set and collect utility rates granted pursuant to Public Authorities Law §§ 1020-a, 1020-f, 1020-h and 1020-k was conditioned on a requirement that utility rates to LILCO customers must not be higher than LILCO would have charged had there been no takeover (Public Authorities Law § 1020-h [2], [4], [10]). LIPA has provided evidence of its compliance with this requirement in the form of: (1) January 1998 report entitled “Proposal to Implement Rate Reduction for Electric Customers on Long Island”; (2) four public hearings held in Nassau and Suffolk Counties; (3) a March 12, 1998 evidentiary public hearing; and (4) an April 9, 1998 report entitled “Decision Approving with Modifications Proposal to Implement Rate Reduction for Electric Customers on Long Island”. Plaintiffs have failed on the motion to make any showing that LIPA’s de *997 cisión will not result in lower rates. Plaintiffs’ proffer that a county-wide sales tax would be a more effective financial device is insufficient to create a viable claim since LIPA retains sole discretion for financial plans within the context of its statutory authority and mandates.
Plaintiffs’ claims based upon statutory (second and fourth causes of action) and constitutional (third cause of action) grounds are equally unsustainable. Public Authorities Law § 1020-q (3) bars only those judicial determinations for property tax refunds between 1976 and January 15, 1987 (the effective date of the title). No bar exists to preclude LIPA from asserting its right to collect “Shoreham” property tax over-assessments (Shoreham Tax Refund) or to enter into any agreement settling 1987 over-assessments including the $868 million tax certiorari judgment against Suffolk County (see, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., 88 NY2d 503 [1996], supra). Public Authorities Law § 1020-f (u) grants LIPA authority to fix utility rates. LIPA’s proposed bifurcated rate structure is authorized pursuant to this provision and does not impose a tax which violates the Suffolk County Tax Act (see, Giuliani v Hevesi, 228 AD2d 348 [1st Dept 1996], mod 90 NY2d 27 [1997]). Finally, Public Authorities Law § 1020-Z provides that: “The bonds, notes and other obligations of the authority shall not be a debt of the state or of any municipality, and neither the state nor any municipality shall be liable thereon”. This identical municipal liability disclaimer is contained on the LIPA-issued bonds and is consistent with the constitutional mandate set forth pursuant to article X, § 5 of the New York Constitution (“[n] either the state nor any political subdivision thereof shall at any time be liable for the payment of any obligation issued by * * * a public corporation heretofore or hereafter created”). No basis exists under these circumstances to sustain plaintiffs’ constitutional claim (third cause of action). (See, Wein v City of New York, 36 NY2d 610 [1975]; Schulz v State of New York, 84 NY2d 231 [1994], cert denied 513 US 1127 [1995].)
Finally, although not ripe for judicial review, plaintiffs’ fifth and sixth causes of action fail to assert any viable claims. State agency rate-making decisions involving highly technical issues requiring special expertise are to be accorded substantial deference and cannot be set aside unless they lack a rational basis (see, Matter of Abrams v Public Serv. Commn., 67 NY2d 205 [1986]). LIPA has submitted evidence including the convening of five public hearings and its April 9, 1998 report detailing *998 the reasons for its final decision sufficient to show that its decision was rationally based and was neither arbitrary nor capricious. Moreover, plaintiffs’ sixth cause of action claiming violation of 42 USC § 1983 may only be sustained if plaintiffs, as ratepayers, can show that they have a protectable property interest in the rates they are charged by LIPA. Such claims are not viable since ratepayers have no protectable property interest in rates they are charged by their utility provider (see, Matter of Niagara Mohawk Power Corp. v New York State Dept. of Transp., 224 AD2d 767 [3d Dept 1996]).
A preliminary injunction may be granted upon a clear showing of three things: (1) the likelihood of ultimate success on the merits; (2) irreparable injury to movant absent the granting of the preliminary injunction; and (3) balancing of the equities in movant’s favor (Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990]; Rosa Hair Stylists v Jaber Food, 218 AD2d 793 [2d Dept 1995]). Movants have failed to make the threshold showing which would entitle IFCE to a preliminary injunction. The LIPA Act empowered LIPA “sole discretion” to purchase “all or any part of [LILCO] * * * assets” provided the ratepayers thereby benefit from lower rates (Public Authorities Law § 1020-h [2]). Defendant has submitted sufficient evidence to show its compliance with the broad and flexible mandates granted by the LIPA Act. Movants have wholly failed to make an adequate showing of the likelihood of ultimate success on the merits or a balancing of the equities in IFCE’s favor. Nor have plaintiffs submitted any proof that the continuing implementation of LIPA’s plan replacing LILCO will result in irreparable injury to IFCE absent an injunction. Based upon these factors and a candid representation that movants cannot post an undertaking (CPLR 6512), plaintiffs’ application for a preliminary injunction must be denied. Accordingly, it is ordered that plaintiffs’ motion for an order pursuant to CPLR 6301 and 6314 granting a preliminary injunction is denied; and it is further ordered that defendant’s cross motion for an order pursuant to CPLR 3211 (a) (2), (4), (5) and (7) dismissing plaintiffs’ complaint is granted. The complaint against the Long Island Power Authority is hereby dismissed; and it is further ordered that plaintiffs’ cross motion for an order pursuant to CPLR 3025 (b), seeking leave to amend the complaint to add an additional cause of action claiming that LIPA’s proposed bifurcated rate plan is arbitrary and unreasonable in favor of Nassau County ratepayers, is denied. The proposed seventh cause of action does not state a valid claim against defendant. *999 Accordingly, movant’s application for leave to amend the complaint must be denied; and it is further ordered that the cross motions by the proposed interveners, Nassau County Legislature, Town of Riverhead and Town of Southold, seeking leave to intervene in this proceeding pursuant to CPLR 1012 and 1013 are denied as moot based upon dismissal of the plaintiffs’ complaint.

 LILCO and BUGC had previously entered into an “Amended and Restated Agreement and Plan of Exchange and Merger” which provided for the business combination of BUGC and LILCO as peer firms in a binding share exchange and the formation of a holding company to manage the combined business.