[752 NYS2d 320]

In the Matter of Town of Islip et al., Respondents, v Long Island Power Authority et al., Appellants.

Second Department, October 7, 2002

2

APPEARANCES OF COUNSEL

*Rivkin Radler, LLP,* Uniondale (*Evan H. Krinick* and *Michael P. Versichelli* of counsel), and *Ruskin, Moscou, Evans*

*& Faltischek, P.C.,* Mineola (*Arthur J. Kremer* of counsel), for Long Island Power Authority and another, appellants. (One brief filed.)

*Schapiro & Reich,* Lindenhurst (*Perry S. Reich* and *Steven M. Schapiro* of counsel), and *Murphy Bartol & O'Brien,* Mineola (*Jeffrey P. Sharkey* of counsel), for Town of Brookhaven, appellant; *Robert J. Cimino, County Attorney,* Hauppauge (*Robert L. Garfinkle* of counsel), for County of Suffolk, appellant; and *Michael Englert,* Poughkeepsie, for Shoreham-Wading River School District, appellant. (One brief filed.)

*Lorna B. Goodman, County Attorney* (*Farrell Fritz, P.C.,* Uniondale *[Dolores Fredrich* and *Jennifer Mone]* of counsel), for County of Nassau, appellant.

*Hamburger, Maxson & Yaffe, LLP,* Melville (*Richard Hamburger* and *Lane T. Maxson* of counsel), for North Shore Library District, appellant, and *Sapienza & Frank,* Massapequa, for Wading River Fire District, appellant. (One brief filed.)

*Vincent J. Messina, Jr., Town Attorney,* Islip, for Town of Islip and others, respondents.

*John B. Zollo, Town Attorney,* Smithtown (*Fred Calandrino* of counsel), for Town of Smithtown, respondent.

### OPINION OF THE COURT

Per Curiam.

In this proceeding, the petitioners challenge the legality of a portion of the Shoreham Settlement Agreement (hereinafter the Settlement Agreement) entered into by the appellants, Long Island Power Authority (hereinafter LIPA), Long Island Lighting Company (hereinafter LILCO), the County of Suffolk, the County of Nassau, the Town of Brookhaven (hereinafter Brookhaven), the Shoreham-Wading River Central School District, the Wading River Fire District, and the North Shore Library District, which resolved various issues and litigation involving the Shoreham Nuclear Power Plant (hereinafter the Shoreham plant). The history of the Shoreham plant, which is located in Brookhaven in Suffolk County and within the Shoreham-Wading River Central School District, Wading River Fire District, and North Shore Library District, has been detailed in the numerous decisions in litigation generated by its construction and ultimate closing (*see Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.,* 88 NY2d 503; *Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398; *Matter of Suffolk County v Long Is. Power Auth.,* 258 AD2d

226; *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven,* 246 AD2d 156).

In 1986 the New York State Legislature enacted the Long Island Power Authority Act (Public Authorities Law, art 5, tit 1-A [hereinafter the LIPA Act]). The LIPA Act created LIPA, a not-for-profit public corporation with broad powers to effectuate the legislation's purposes, which were primarily to close the Shoreham plant, to replace LILCO as the provider of power on Long Island, and to reduce power costs for Long Island ratepayers (*see* Public Authorities Law §§ 1020-a, 1020-c, 1020-f, 1020-g, 1020-h; *Matter of Citizens For An Orderly Energy Policy v Cuomo, supra* at 407). Thus, LIPA was authorized, among other things, to acquire all or any part of the stock or assets of LILCO (*see* Public Authorities Law § 1020-h [2]). LIPA acquired the Shoreham plant in 1992 and, in 1998, LIPA's final acquisition of LILCO was consummated.

Although the LIPA Act exempts LIPA from taxation (*see* Public Authorities Law § 1020-p), in recognition of the local taxing jurisdictions' loss of property tax revenues resulting from LIPA's acquisition of LILCO's property, the LIPA Act provides for LIPA to make payments in lieu of taxes (hereinafter PILOTS) equal to the taxes and assessments the local taxing jurisdictions would have received had LILCO's property not been acquired by LIPA (*see* Public Authorities Law § 1020-q [1]; *Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., supra* at 509). However, as to the Shoreham plant, the PILOTS are to be reduced annually until they equal the taxes and assessments that would have been levied on the plant in a nonoperative state (*see* Public Authorities Law § 1020-q [1]).

Prior to its acquisition by LIPA, LILCO had commenced various tax certiorari proceedings challenging property tax assessments of the Shoreham plant. After trial, it succeeded in reducing the assessments for certain tax years through 1983-1984 (hereinafter the Phase I litigation). Pursuant to a judgment in the Phase I litigation, the County of Suffolk paid approximately $81 million to LILCO (*see Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven,* 202 AD2d 32). A second trial covering the tax years 1984-1985 through 1991-1992 (hereinafter the Phase II litigation) resulted in a March 1997 judgment of over $868 million in LILCO's favor. That judgment was affirmed by this Court (*see Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven,* 246 AD2d 156, *supra*).

In or about July 1992, LIPA and LILCO commenced proceedings challenging the assessment of the Shoreham plant for the

1992-1993 tax year, the base year for determining the amount of PILOTS to be paid by LIPA (*see* Public Authorities Law § 1020-q [1]). Between 1992 and 1999, LIPA entered into a series of interim PILOT agreements pursuant to which it agreed to make PILOTS to the taxing jurisdictions based on the assessment of the Shoreham plant for the 1991-1992 tax year, the tax year prior to LIPA's acquisition of the Shoreham plant. The agreements preserved LIPA's right to seek a refund of payments if the property tax assessment for the 1992-1993 tax year was ultimately determined to be excessive. In accordance with the interim PILOT agreements, LIPA made payments of more than $350 million. The taxing jurisdictions moved to dismiss the tax certiorari proceedings on the ground that LIPA and LILCO failed to timely file a note of issue (*see* RPTL 718). The motions were denied, but an appeal was pending when the Settlement Agreement was signed.

In 1992, shortly after the first interim PILOT agreement was signed, LIPA also commenced an action seeking a declaration as to its rights and obligations under the LIPA Act regarding the PILOTS. Ultimately, the Court of Appeals determined, among other things, that LIPA's PILOT obligations commenced with the December 1, 1992—November 30, 1993, tax year and not on March 1, 1992, the day after the Shoreham plant was transferred to LIPA, and that LIPA could seek refunds of PILOTS it overpaid based upon an overassessment of the Shoreham plant (*see Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., supra*). Consequently, if LIPA and LILCO were successful in reducing the assessment for the 1992-1993 tax year, as LILCO had been for the prior tax years, LIPA would be entitled to a significant refund of the payments it made pursuant to the interim PILOT agreements. LIPA subsequently commenced an action seeking a money judgment against the taxing jurisdictions for a refund of excess PILOTS. That action was pending on the date of the Settlement Agreement.

In addition to the tax certiorari proceedings involving the Shoreham plant, LIPA commenced numerous other proceedings challenging the assessments of various non-Shoreham properties. Those proceedings, as well as other litigation, were also pending at the time of the Settlement Agreement. Among those matters was a CPLR article 78 proceeding commenced by Suffolk County challenging the agreements pursuant to which LIPA acquired LILCO's stock. The Supreme Court denied the petition and dismissed the proceeding (*see Suffolk County v*

*Long Is. Power Auth.,* 177 Misc 2d 208), but an appeal was pending as of the date of the Settlement Agreement.

On April 9, 1998, LIPA issued a rate decision establishing the rates and tariffs for the purchase of electricity from LIPA. The rate decision includes the Shoreham Property Tax Settlement Rider (hereinafter the Rider) which provides for the imposition of a surcharge on Suffolk County ratepayers commencing in 2003. The Rider was included in anticipation of LIPA and the other appellants entering into the Settlement Agreement. The Initiative For Competitive Energy, a group of Suffolk County business and residential ratepayers, subsequently commenced an action challenging, among other things, the bifurcated rate structure for Suffolk County, Nassau County, and Rockaway ratepayers. The complaint in that action was dismissed (*see Initiative for Competitive Energy v Long Is. Power Auth.,* 178 Misc 2d 979).

On January 11, 2000, the appellants executed the Settlement Agreement, resolving the pending actions and proceedings. Pursuant to the Settlement Agreement, LIPA waived its claim for a refund of the PILOTS in the sum of approximately $350 million and released and reduced the Shoreham taxing jurisdictions' obligations under the Phase II litigation judgment, so that their aggregate remaining obligation under the judgment and for any refund of the PILOTS was $620 million. The reduced judgment was to be held by LIPA as security until the taxing jurisdictions satisfied their settlement obligations. LIPA also agreed to make future PILOTS in certain specified amounts. To assist the taxing jurisdictions in funding payment of their settlement obligations, LIPA issued bonds. The surcharge imposed on Suffolk County ratepayers in accordance with the Rider was to be used to pay the debt service, related charges, and obligations incurred in connection with the bonds. The amounts received by LIPA pursuant to the Settlement Agreement were to be used to provide rebates and credits to ratepayers in Suffolk County, Nassau County, and the Rockaways. In addition, LIPA agreed to provide additional credits to ratepayers from its own funds. LIPA also agreed to withdraw all other pending non-Shoreham tax certiorari proceedings. In return, the taxing jurisdictions agreed, among other things, to withdraw their appeal from the Supreme Court order denying their motions to dismiss the tax certiorari proceedings commenced by LIPA and LILCO challenging the 1992-1993 tax year assessment of the Shoreham plant and the appeal from the dismissal of Suffolk

County's CPLR article 78 proceeding challenging LIPA's acquisition of LILCO's stock and to withdraw several other actions and proceedings. The Settlement Agreement was so-ordered by the Supreme Court on May 2, 2000. A consent judgment fixing the assessment for the 1992-1993 tax year and a "stipulation, amended judgment, and order" incorporating the principal terms of the Settlement Agreement were also so-ordered on that date.

The petitioner Town of Islip and the individual petitioners, residents of the Towns of Babylon, Smithtown, and Southampton, commenced this CPLR article 78 proceeding against the appellants challenging that portion of the Settlement Agreement which provides for the payment of the taxing jurisdictions' obligations by a surcharge on all Suffolk County ratepayers. The Town of Smithtown subsequently intervened as a petitioner. According to the petitioners, that portion of the Settlement Agreement violated section 3 of the Suffolk County Tax Act (hereinafter the SCTA), which provides, in relevant part:

> "If in a final order in any proceeding under article 7 of the real property tax law it is determined that the assessment reviewed was excessive * * * then any amount at any time collected upon such excessive * * * assessment * * * as determined in such order shall, in the same manner as other county charges * * * be audited and paid by the county to the petitioner or other person paying such tax or other levy, including interest thereon as provided in article 7 of the real property tax law. So much of any tax or other levy, including interest thereon, as shall be refunded which was imposed for town, county special district or school district, as hereinafter provided in the following paragraph, purposes shall be charged by the county to such town or special district and charged by the town to such school district as hereinafter provided.

> "Any final order in a proceeding under article 7 of the real property tax law which orders or directs the correction or striking of an assessment appearing on that portion of a town assessment roll applicable to a school district, shall be binding on such town. Any amount of taxes of such school district at any time collected upon such assessment in excess of the amount which would have been

paid had such assessment been made as determined by such order, shall be refunded by the county and shall be charged by the county to such town. Such refund shall not be charged by the town to such school district, except where the assessment subject to such proceeding is applicable to property improved by a nuclear powered electrical generating facility. In such case, the town shall charge such school district any amount of taxes collected by such school district upon such assessment in excess of the amount which would have been paid had such assessment been made as determined by such order." (L 1920, ch 311, amended by L 1958, ch 95, amended by L 1980, ch 837, amended by L 1983, ch 1018, amended by L 1996, ch 636.)

The petitioners contended that the Settlement Agreement illegally utilizes a surcharge imposed on all Suffolk County ratepayers to repay the Phase II litigation judgment rather than a charge back of the amount of the judgment to the taxing jurisdictions which had received the tax revenues and benefited from the overassessments in accordance with section 3 of the SCTA. In their answers to the petition, the appellants asserted, among other affirmative defenses, that the petitioners did not have standing to maintain the proceeding. In opposition to the petition they also contended, among other things, that the Settlement Agreement was a global settlement designed to resolve many issues and years of pending litigation and did not simply involve the collection of a money judgment obtained pursuant to Real Property Tax Law article 7, thereby implicating section 3 of the SCTA.

The Supreme Court concluded that the petitioners have standing, granted the petition, and struck that provision of the Settlement Agreement which imposes a surcharge on Suffolk County ratepayers as violative of section 3 of the SCTA. We agree that the petitioners have standing, but conclude that the Settlement Agreement does not violate the SCTA.

■ The Supreme Court properly concluded that the petitioners have standing to maintain this proceeding. A party seeking to challenge governmental or administrative action must demonstrate an "injury in fact" distinct from that of the general public which falls within the "zone of interest" that the relevant statute seeks to promote or protect (*Silver v Pataki,* 96 NY2d 532, 539; *Matter of Colella v Board of Assessors of County of Nassau,* 95 NY2d 401, 409-410; *Matter of Transactive Corp.*

*v New York State Dept. of Social Servs.*, 92 NY2d 579, 587; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773). The petitioners demonstrated an injury by showing that the amounts they will pay as a result of the surcharge exceed the amounts they would be required to pay if the refunds were charged back pursuant to section 3 of the SCTA. Their injury, as non-Brookhaven, Suffolk County ratepayers, differs from that of Brookhaven, Suffolk County ratepayers and ratepayers in Nassau County and the Rockaways (*cf. Matter of Colella v Board of Assessors of County of Nassau, supra* at 410; *Society of Plastics Indus. v County of Suffolk, supra* at 774; *see* Public Service Law § 109). Further, the petitioners are within the "zone of interests" section 3 of the SCTA seeks to protect. The statute places the burden of repaying an overassessment on the taxing jurisdictions which benefited from the initial overassessment and, thus, seeks to protect other municipalities from the burden of repayment when they did not enjoy such benefits (*see Prodell v State of New York*, 222 AD2d 178, *appeal dismissed* 88 NY2d 1064, *lv denied* 89 NY2d 809, *cert denied* 522 US 810).

The appellants other than LIPA, LILCO, and the County of Nassau contend that this proceeding is time-barred because it was commenced 25 months after the April 9, 1998, rate decision establishing the surcharge which, they claim, is, in effect, the administrative action the petitioners challenge. However, that contention, which was not asserted in the Supreme Court, is not properly raised for the first time on appeal (*see Matter of Matarrese v New York City Health & Hosps. Corp.*, 247 AD2d 475).

Contrary to the determination of the Supreme Court, the Settlement Agreement is not subject to the provisions of section 3 of the SCTA. By its terms, section 3 applies to a final order in a proceeding under article 7 of the Real Property Tax Law. The Settlement Agreement does not simply provide for the collection of a reduced judgment in an article 7 proceeding as the petitioners contend. The $620 million to be paid through the rate surcharge encompasses both the taxing jurisdictions' liability for the judgment, as reduced, and the potential liability for the refund of the PILOTS. Further, in addition to withdrawing its claim for PILOT refunds in excess of $350 million, LIPA also agreed to withdraw its claims of approximately $555 million in the non-Shoreham tax certiorari proceedings. LIPA also agreed to make future PILOTS and to provide rebates and credits to ratepayers. To that extent, all Suffolk

County ratepayers are beneficiaries of the Settlement Agreement. The Settlement Agreement represents a compromise of various interrelated claims and litigation and the payment of the $620 million cannot be segregated from the other provisions and characterized as a refund made pursuant to a final order in an article 7 proceeding. The fact that a reduced property tax judgment is being held as security for the payment of the settlement obligations does not change the nature of those obligations under the Settlement Agreement as a whole. Consequently, the Settlement Agreement does not violate section 3 of the SCTA. Therefore, the judgment is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed.

In light of the foregoing, it is unnecessary to address the appellants' remaining contentions.

ALTMAN, J.P., FLORIO, H. MILLER and COZIER, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed.